**Samuel KLEIN t/a Acme Rental Co., Appellant,**

**v.**

**Aloysius PRICE, Appellee.**

**No. 18152.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 27, 1964.

Decided March 26, 1964.

Petition for Rehearing En Banc Denied May 12, 1964.

Mr. Denver H. Graham, Washington, D. C., with whom Mr. Albert E. Brault, Washington, D. C., was on the brief, for appellant.

Mr. Franklyn Yasmer, Washington, D. C., with whom Mr. Stanley A. First, Washington, D. C., was on the brief, for appellee.

Before WILBUR K. MILLER, BURGER and WRIGHT, Circuit Judges.

WILBUR K. MILLER, Circuit Judge:

On July 25, 1959, about 9:00 p. m. Aloysius Price was drinking beer on the small private porch [1] adjoining the light housekeeping room at the rear of the second floor of a rooming house in which he had lived for two years. He had just returned from a shopping expedition on which he had bought a case of beer and a container of yellow corn meal. When his wife, who was annoyed because he had not bought white corn meal, came out on the porch, he saw a knife protruding from her pocket. Alarmed because on a previous occasion she had attacked him with a knife, he seized a chair with which, in lion-tamer fashion, he pushed his wife against the wall. She in turn suddenly pushed the chair so forcibly that as a result Price fell backward through the railing to the ground below, taking the chair with him.

On February 21, 1961, Price filed this suit in the District Court to recover $80,000 from his landlord, Samuel Klein,

1. The porch was eight or ten feet long, extended four feet from the house, and its three open sides were protected by a wooden railing.

because of his injuries. The complaint contained the usual allegations of negligence in the maintenance of the railing, and charged violation of the District of Columbia Housing Code. These allegations were controverted. Klein's motion for summary judgment was denied and the case went to trial on May 17, 1962. At the conclusion of the plaintiff's evidence, the defendant's motion for a directed verdict was denied. Standing on his motion, Klein offered no proof, so the case was submitted to the jury on the plaintiff's evidence. The result was a verdict for $20,000 in favor of Price. Klein's motion for judgment notwithstanding the verdict was denied. He appeals.

It is necessary to examine the evidence for the plaintiff to see whether he made out a case for the jury. That evidence showed that soon after the fall Price was taken to a hospital where, of course, the usual record of his admission and treatment was kept. This record, identified by a hospital attendant and read to the jury by Price's attorney, included the following:

"* * * Gave a history—patient states wife pushed him off a second story porch. * * *"

Price was the only witness who testified as to how the incident occurred and as to the condition of the railing prior thereto. On direct examination he described the porch as follows:

"Well, it was about four by eight, I guess. I mean four foot from the building out and about eight or ten feet across and with a post on each corner and a post in the center and a railing from corner post to center post."

He described its condition thus:

"Q. Now, from your observation in living there in this room and porch, how did the porch appear to you prior to July 25, 1959?

"A. It appeared to be all right. Otherwise I wouldn't have been using it."

He told of getting the wrong kind of corn meal and then said:

"So I went out on the porch. Took me a can of beer and went out on the porch. It was hot that day. And sat down.

"So later she came out. As I looked around and I heard her footsteps and I noticed this paring knife in her pocket, so I asked her what was the knife doing in her pocket.

"So she returned no answer, just walked towards me and there was a chair sitting near me. I grabbed the chair by the back and just stuck it out towards her, the feet out towards her, back to back against the building and asked her what was the matter.

"While I was standing there unexpectedly she just gave the chair a sudden push and I just stumbled back and fell and most of my body hit the railing there on the right-hand center post.

"And the railing just opened up like a gate and I kept going right on—right down on the ground. I fell on this ice box that was laying there and I rolled off that on the ground.

"That is all I know about it. Then after I hit down there, I was in such pain I don't know what else happened."

Cross-examination as to the cause of the fall included the following:

"Q. Now then, what did Mrs. Price do when you had her penned up against the wall with the leg of the chair?

"A. She stood there for awhile and all of a sudden she pushed the chair and after that I had no chance—she pushed me and I just fell backwards.

"Q. When you fell backwards what did you hit?

"A. I hit the railing.

"Q. And the railing opened and you fell down?

"A. Yes.

"Q. And the chair was with you as you went down?

"A. That is correct.

"Q. The chair fell to the ground also?

"A. I didn't have a chance to turn it loose. It happened so quick.

"Q. And your wife did push you off the porch?

"A. No, she pushed the chair and I fell when she pushed the chair."

Price testified that, whenever he had had any complaint about a condition in the premises he rented, the necessary repairs had been promptly made. He had never complained about the railing, however, as it did not appear to be weak. In a pretrial deposition he stated that he had leaned against it on occasion. He admitted that in a conversation with his wife after the incident "she said it was my fault and I said it was her fault * * *." After the fall, when he was lying on the ground in great pain, he said to his wife, "[G]et away from me." They never lived together after that night.

Over Klein's objection, the trial judge received in evidence Sections 2501 and 2508 of the District of Columbia Housing Regulations.[2] Particular reference was made to the following sentence in Section 2508: "All steps, rails, balustrades, or other guards shall be of sound material

and securely fastened." Price relies upon Whetzel v. Jess Fisher Management Co.[3] as making the housing regulations pertinent here and as justifying a finding that Klein was negligent.

■ The *Whetzel* case relied upon by appellee held that a breach of the duty imposed upon the landlord by the housing regulation is some evidence of negligence. But this rule has no application unless there is some showing of breach of the duty imposed by the regulations. Price's testimony that the railing "opened up like a gate" when he fell backward against it in the scuffle with his wife is not evidence of negligence or of an inherent weakness in the rail. On the contrary, the record discloses that appellee, upon his admission to the hospital as well as in his testimony on trial, said that his wife pushed him off the porch.

■ The real question is whether the housing regulations, or the common law duties as a landlord, required appellant to provide a railing of sufficient strength to withstand the impact of a man's body striking it in the course of the scuffle described in appellee's testimony. We conclude that a landlord is not required to provide a safe arena for an altercation such as occurred here. He is not bound to foresee such stresses which are beyond normal and anticipated use; the housing regulations do not require railings which will stand up under such abnormal stress.

2. The sections are as follows:
"Section 2501—General Maintenance and Repair.
"Every premises accommodating one or more habitations shall be mantained and kept in repair so as to provide decent living accommodations for the occupants. This part of this Code contemplates more than mere basic repairs and maintenance to keep out the elements; its purpose is to include repairs and maintenance designed to make a premises or neighborhood healthy and safe."
"Sec. 2508—Stairways, Steps and Porches. [Provisions relating only to stairways and steps are omitted.]
"Stairways, steps and porches shall be firm, and the walking surfaces shall be sufficiently smooth so as to be readily cleaned and provide safe passageways

free of tripping hazards. * * * Open porches forty-two inches or more above the ground shall have balustrades or other guards not more than forty-two inches in height, along the entire length of any open, unprotected side. Open porches less than forty-two inches but more than twenty-four inches above the ground shall have balustrades, or other guards not more than forty-two inches in height, or a top rail not more than forty-two inches above the porch floor with an intermediate rail approximately midway between the floor and top rail, along the entire length of any open unprotected side. * * * All steps, rails, balustrates, or other guards shall be of sound material and securely fastened."

3. 108 U.S.App.D.C. 385, 282 F.2d 943 (1960).

Appellee did not rely on the doctrine of *res ipsa loquitur* and of course it would not govern for the porch was not under the landlord's exclusive control but rather for two years had been subject to the exclusive use and control of appellee.

In these circumstances we need not reach the questions raised by appellant as to absence of notice of any claimed defect or of the issue of contributory negligence on the part of appellee, or claimed errors in the jury charge. We note that no evidence of actual or constructive notice of a defect was tendered by appellee.

Appellee thus having failed to meet his burden of proof there was no issue for submission to the jury but, having submitted it to the jury, probably out of an abundance of caution, the trial judge should have granted judgment *non obstante veredicto* thereafter.

Reversed.

J. SKELLY WRIGHT, Circuit Judge (dissenting):

This accident occurred on slum property owned by the appellant and rented to the appellee here for habitation. As the court's opinion shows, Section 2508 of the Housing Regulations of the District of Columbia applies to this type of property as well as to all other property in the District of Columbia in which people are expected to live. In pertinent part, Section 2508 provides with respect to such property: " * * * All steps, rails, balustrades, or other guards shall be of sound material and securely fastened." Here the jury may well have concluded that the appellant landlord had neglected his duty under the regulations in failing to provide in this rental property a balustrade "of sound material * * * securely fastened," and that this negligence was a—not necessarily the—

proximate cause of the accident. See Whetzel v. Jess Fisher Management Co., 108 U.S.App.D.C. 385, 282 F.2d 943 (1960); compare Gould v. DeBeve, 117 U.S.App.D.C. ——, 330 F.2d 826 (No. 17,-909, decided February 6, 1964).

The test to be applied in determining whether this court, or any other court, should upset that finding and grant judgment notwithstanding the verdict is whether that verdict is so contrary to the weight of the evidence that no reasonable juror[1] would have voted for it.[2] Here twelve jurors voted for it. Under the circumstances of this case, I would not indict them all as unreasonable.

I respectfully dissent.

---

1. As Dean Green phrased it, there is a case for the jury unless it can be found "that there was no room for two reasonable inferences or that reasonable minds could not disagree about the matter." GREEN, JUDGE AND JURY 389 (1930).

2. "And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable." Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946).