Morton W. NOBLE, Michael M. Abrams, and Max A. Bassin, Appellants,

v.

Floretta WORTHY, Administratrix of the Estate of Kushan Worthy, Appellee.

Floretta WORTHY, Administratrix of the Estate of Kushan Worthy, Appellant,

v.

Morton W. NOBLE et al., Appellees.

Nos. 11131 and 11132.

District of Columbia Court of Appeals.

Argued March 15, 1977.

Decided Oct. 6, 1977.

---

John F. Mahoney, Jr., Washington, D. C., for appellants-cross appellees Noble, et al. John F. Myers, Washington, D. C., also entered an appearance for Mr. Noble.

Samuel J. Lowe, Washington, D. C., for appellee-cross appellant Worthy. Clinton W. Chapman, Washington, D. C., also entered an appearance for Floretta Worthy.

Before KERN, YEAGLEY and HARRIS, Associate Judges.

HARRIS, Associate Judge:

This case resulted from the fatal fall of a 22-month-old child from the balcony of a fifth-floor apartment in a building owned by Messrs. Noble, Abrams, and Bassin. The building had been designed by Noble, an architect.[1] The defendants appeal from a verdict against them in the amount of $35,997, based upon their allegedly negligent maintenance of the balcony. The administratrix of the deceased child's estate, his mother, appeals from the dismissal of her separate claim against Noble for architectural malpractice in designing the balcony. We affirm the trial court's granting of defendant Noble's motion for a directed verdict on the malpractice claim, reverse the denial of defendants' motion for a directed verdict on the negligence claim, and remand the case with directions to enter judgment for the defendants.

I

Plaintiff was visiting her boyfriend, John Reed, in his apartment at the Park Meridian Apartments. Plaintiff frequently babysat there for Reed's then two-year-old daughter, Nicole, invariably bringing her son Kushan with her. On the fateful evening, Kushan and Nicole were playing on the balcony of the apartment while plaintiff was inside unplaiting Reed's hair. The drapes across the balcony doorway were partially closed, blocking the adults' view of the children. The children were out of the adults' sight for approximately seven minutes. During that period, a neighbor, Lawrence Harris, saw someone pointing to the balcony and shouting. He looked up and saw Kushan on the exterior of the balcony, holding on to either the floor or a rail. The

---

1. For convenience, we refer generally to the parties by their trial court roles as plaintiff and defendants.

child fell, and Harris rushed to the apartment to report the tragedy. Kushan died several hours later. No witness knew how Kushan had gotten outside the balcony.

Plaintiff, by her own estimate, had visited the apartment about 100 times. Reed had warned plaintiff that one of them should always be on the balcony with the children whenever they played there. Although she testified that she always accompanied the children when they were on the balcony, plaintiff acknowledged that she was not there at the time of the fall.

One of plaintiff's own witnesses, Ronald Horne, testified that on an earlier occasion he had seen Kushan with his head and shoulders outside of the bars of the balcony. At that time, Horne sent his neighbor Harris up to tell plaintiff of her son's whereabouts, and she then brought him inside. Twenty minutes later, Horne again saw Kushan outside, apparently once more unattended. Harris gave similar testimony about the incident, except that he recalled that he had retrieved Kushan while his mother was in the hall. He testified that he then warned plaintiff to watch her child. Plaintiff, on the other hand, denied that anyone had ever told her that they had seen Kushan hanging outside the balcony. However, she did recall that Harris once told her that Kushan was out on the balcony.

Reed's rather typical balcony enclosure consisted of two large panels, some vertical bars, and one horizontal bar each on the top and bottom. The parties stipulated to the relevant dimensions. The gap between the bottom rail and the floor was 6¾ inches, while that between the panels and the floor was 6½ inches. The distance between two of the vertical rails was stipulated at 5 inches; that between another sample pair was 5¼ inches. The rail was slightly over 42 inches high. Kushan's height at the time of the fall was stipulated to be 28 inches. Plaintiff testified that she "always kept" a chair on the balcony.

Defendant Noble testified that no building code provisions set forth standards for designing balconies, and that from 1964 to the date of trial architects customarily had designed vertical balcony railings to be six inches apart. Another defense witness was Howard Osborg, Chief of the Engineering Section in the District of Columbia Department of Housing and Community Development, who had been the Chief of the Structural Section when the building's plans were submitted for a building code compliance review. The code contained no provisions for balconies not projecting into public space (e. g., over the sidewalk). He testified that the building's plans, which bore an approval stamp, had been found acceptable by a structural engineer in 1964. He also indicated that reviewing engineers normally exercised their individual judgments on whether the distances between horizontal balcony railings were safe, because there was no set norm.

Plaintiff's only witness on architectural standards, William Severtsen, stated that he was unable to testify as to any generally prevailing balcony safety standards, but he asserted his personal belief that the balcony was unsafe for children.

There was no evidence that the balcony's condition had deteriorated or changed in any way since the building's construction.

The trial court granted defendant Noble's motion for a directed verdict on the claim for architectural malpractice, but submitted the negligence claim to the jury. Judgment was entered for the plaintiff on a special verdict, see Super.Ct.Civ.R. 49(a), and damages were found to be $35,997.

II

We first address the allegation that the trial court erred in dismissing plaintiff's claim for architectural malpractice. Architects are held to a standard of performance which requires them to employ that degree of skill and care ordinarily used by their colleagues.[2] *Frank M. Dorsey*

---

2. This also is true as to doctors, *Harris v. Cafritz Memorial Hospital,* D.C.App., 364 A.2d 135, 137 n. 2 (1976), and dentists, *Smith v.*

*Reitman,* 128 U.S.App.D.C. 352, 353, 389 F.2d 303, 304 (1967).

& Sons v. Frishman, 291 F.Supp. 794, 796–97 (D.D.C.1968); see W. Prosser, Torts § 32, at 161–62 (4th ed. 1971).

■ Plaintiff's only witness on architectural matters admitted that he could not testify as to any generally prevailing standard of safety in balcony construction. In contrast, the defense evidence showed that the prevailing standards had been satisfied in the construction of Reed's balcony. Without evidence indicative of a deviation from accepted safety standards, plaintiff failed to make out a prima facie case of architectural malpractice. The trial court's granting of a directed verdict on her malpractice claim therefore must be affirmed.

### III

■ Turning to the issue of appellants' alleged negligent maintenance of the balcony, we conclude that the trial court erred in denying defendants' motion for a directed verdict. The defendants' duty as landlords was to provide a "healthy and safe" dwelling. 5G D.C.R.R. [Housing Reg.] § 2501; see Clarke v. O'Connor, 140 U.S.App.D.C. 300, 306, 435 F.2d 104, 110 (1970).[3] They were bound to exercise "reasonable care under the circumstances." Clarke v. O'Connor, supra, at 307, 435 F.2d at 111 (footnote omitted); see Klein v. Price, 118 U.S.App. D.C. 54, 56, 331 F.2d 800, 802 (1964). A landlord's duty of reasonable care does not require him to foresee all possible dangers. See Klein v. Price, supra, at 56, 331 F.2d at 802; cf. Graham v. Safeway Stores, Inc., D.C.App., 316 A.2d 852 (1974).

■ We are unable to conclude that defendants were bound to anticipate that a 22-month-old child might be allowed to play on a fifth-floor apartment balcony without adult supervision, or even casual observa-

tion, for a period of several minutes.[4] A landlord is under no obligation to provide a residence so secure that no accident can happen. Accidents—including ones as tragic as this—do happen, yet their occurrence, without more, does not show negligence. The record contains no evidence whatsoever as to how Kushan fell; illustratively, he could have climbed on the chair which had been left on the balcony and gone over the railing. Since plaintiff introduced no probative evidence suggesting negligence (relying simply on the occurrence of the accident), she failed to make out a prima facie case. The jury impermissibly was left to mere speculation as to the cause of the fall, and hence it was erroneous to deny defendants' motion for a directed verdict on the claim of negligent maintenance of the balcony. See, e. g., Jones v. Safeway Stores, Inc., D.C.App., 314 A.2d 459 (1974); The Pennsylvania Railroad Co. v. Pomeroy, 99 U.S.App.D.C. 273, 239 F.2d 435 (1956); Shewmaker v. Capital Transit Co., 79 U.S. App.D.C. 102, 143 F.2d 142 (1944). The judgment in plaintiff's favor must be set aside.

*Affirmed in part, reversed in part, and remanded with directions to enter judgment for defendants.*

---

3. Section 2508 of the Housing Regulations requires that "All steps, rails, balustrades, or other guards shall be of sound material and securely fastened," and that "Open porches forty-two inches or more above the ground shall have balustrades or other guards not more than forty-two inches in height along the entire length of any open, unprotected side." There is no evidence that the command of the first-quoted sentence was violated, or that the

slightly excessive height, in apparent violation of the second sentence, made the balcony dangerous or helped cause the fall.

4. Even if we were to assume that defendants were on notice of the risk to Kushan, such notice would not be probative of negligence on their part. See S. Kann's Sons Corp. v. Hayes, D.C.App., 320 A.2d 593, 595 (1974).