# G.M. MEREDITH AND ASSOCIATES, Plaintiff and Counterdefendant

v.

# BLUE PACIFIC MANAGEMENT CORP., Agent for Pago Plaza, Defendant and Counterclaimant

High Court of American Samoa
Trial Division

CA No. 108-90

May 26, 1995

Before RICHMOND, Associate Justice, AFUOLA, Associate Judge, and LOGOAI, Associate Judge.

Counsel:      For Plaintiff and Counterdefendant, Roy J.D. Hall, Jr. and Katopau T. Ainu`u
For Defendant and Counterclaimant, William H. Reardon

Opinion and Order:

Plaintiff G.M. Meredith and Associates ("GMA") commenced this action on December 7, 1990, to recover unpaid compensation for professional services rendered to defendant Blue Pacific Management Corp. ("Blue Pacific"), as the agent of Pago Plaza ("Plaza"). Blue Pacific counterclaimed for damages related to the installation of a skylight at the office building owned by Plaza. GMA was granted partial summary judgments, entered on April 27, 1992, and October 20, 1992, for its claim. Those judgments were paid, leaving only Blue Pacific's counterclaim at issue. Trial on the counterclaim was held on September 15, 1994. The parties' principals, GMA's George M. Meredith ("Meredith") and Blue Pacific's James L. McGuire ("McGuire"), and their counsel were present.

## FACTS

On December 1, 1986, McGuire, as Plaza's agent, and Peter G. Morley ("Morley"), then in immediate charge of GMA's office and operations in American Samoa, negotiated an agreement for GMA's professional services to Plaza. They agreed to charges on an hourly basis for various services performed. They contemplated using GMA's services for several specific projects, including a skylight over the interior courtyard, at Plaza's office building in Pago Pago, American Samoa. McGuire memorialized this agreement by his letter, dated December 3, 1986, to Morley. No formal owner-architect agreement was entered.

GMA assigned Richard Frey ("Frey"), an architect at its American Samoa office, to the skylight project. McGuire and Frey discussed the project, including but not limited to a requirement that the skylight would be built to withstand hurricane-strength winds. By October 1987, Frey had completed the skylight's design, and GMA had prepared the procurement package, consisting of instructions to bidders, a bid form, and an owner-contractor agreement, for its installation. Hawkeye Construction ("Hawkeye") was awarded the contract to do the installation work. Frey supervised the ordering of the specified materials, and during a 10-day period in 1988, Hawkeye performed the work, in accordance with GMA's design and under Frey's architectural oversight.

During the evening of February 2, 1990, Plaza's office building was struck by Hurricane Ofa's rain and heavy winds. The skylight was blown from its mountings, starting at 8:00 to 9:00 p.m. The plastic panels were ripped from their fastening bolts. Some were gone completely. Others

remained dangling from the roof.

Later Plaza replaced the skylight with one of substantially superior strength. It survived Hurricane Val's winds in December 1991. The replacement costs were:

| | |
|---|---:|
| Roof repairs | $ 700 |
| Skylight design | 3,000 |
| Skylight materials | 13,700 |
| Excise taxes | 558 |
| Labor | 3,500 |
| Total | $ 21,458 |

## STANDARD OF CARE

■ The standard of care for an architect is set forth with clarity in *First Nat. Bank of Akron v. Cann*, 503 F. Supp 419, 439 (N.D. Ohio 1980).

> An architect is under a duty to his employer to use the skill and diligence that is ordinarily exercised by architects. Thus, an architect does not guarantee a perfect plan, but is liable only for a failure to exercise reasonable care and diligence exercised by one in the in the profession.

*See also Noble v. Worthy*, 378 A.2d 674, 676-77 (D.C. 1977). This standard may be breached, notwithstanding the fact that the type of injury is "commonplace," where the injury was within "the realm of foreseeability." *Mead v. Kings Supermarket*, 366 A.2d 979 (N.J. 1976). Whether the standard of care is determined on the basis of standard practice in the industry or upon foreseeability of the harm, an architect must be evaluated on the basis of technology available at the time he/she performed the work. *Cann*, 503 F. Supp. at 439.

■ The existence and scope of an architect's duty to supervise the implementation of plans or work methods must be determined from contractual terms, or, in their absence, from the architect's actual conduct. *Walters v. Kellam & Foley*, 360 N.E. 2d 199, 206 (Ind. 1977). The conventional rule for determining an architect's duty to supervise the implementation of his/her design is that an architect's supervisory duty is limited to the implementation of the architectural plan, and does not include supervising the contractor's method of doing the work unless otherwise specified by the parties. *Lukowski v. Vecta Educational*, 401

N.E. 2d 781, 785 (Ind. 1980) (construing *Day v. National United States Radiator*, 360 N.E. 2d 210-11). We do not believe that the distinction between the supervision of design implementation and the supervision of work method is a meaningful one, and we decline to adopt it in this jurisdiction.

■■■ We do hold, however, that the burden to establish the scope of supervision demanded by the profession rests upon the counterclaimant. *Id.*

No evidence was presented, however, establishing what scope of supervision the professional standard demanded. Thus, it is not possible to conclude that GMA was under a positive legal duty imposed by law to supervise the project in such a manner that the problems would have been discovered. *Cann*, 503 F. Supp. at 439. The standard of care is ordinarily provided by expert witnesses who testify to the customs or prevailing standards of the profession. *Noble*, 378 A.2d at 676-77.

### DISCUSSION

We decide this case on a theory of *res ipsa loquitur*. The RESTATEMENT (SECOND) OF TORTS, § 328(D)(1) outlines the prima facie elements of a case for *res ipsa loquitur*:

> It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
>
> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

■ The fact that a rebuilt structure survived a second hurricane is evidence that due care was not used in building the original structure that was destroyed by a prior hurricane. *See Watt v. United States*, 444 F. Supp. 1191, 1194-95 (D.D.C. 1978) (the fact that millions of museum patrons had safely climbed the stairs where plaintiff was injured does not give rise to a conclusive presumption of the architect's due care); *Hecht v. Harrison*, 137 F.2d 687 (D.C. Cir. 1943) (the fact that thousands of customers had walked safely through aisle where plaintiff was injured does

not prevent a jury from finding lack of due care by store owners).

To strengthen this conclusion, we note T.C.R.Ev. 201(b) which reads:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonable be questioned.

It is generally known in the Territory of American Samoa that Hurricane Val was stronger and more destructive than Hurricane Ofa in the harbor area where Pago Plaza is located. It is also generally known that Hurricane Ofa was more damaging in the Tafuna area, some distance away from Pago Plaza. Accordingly, we take judicial notice of the fact that Hurricane Val struck Pago Plaza with greater force than Hurricane Ofa.

The skylight in question was destroyed by Hurricane Ofa, but the skylight which replaced it survived Hurricane Val. Since we have taken judicial notice of the fact that Hurricane Val struck Pago Plaza with greater force than hurricane Ofa, there is a strong presumption that the skylight destroyed by Hurricane Ofa suffered from a design defect.

Although we have no expert testimony as to the standards of the architectural profession, we find, on grounds of foreseeability, that GMA had a duty to design a skylight to survive hurricanes of ordinary strength. See A.S.C.A. § 26.1002 (this section anticipates hurricane strength winds, and implicitly requires that those designing buildings plan for the inevitable hurricanes in our region). Since the threat of hurricanes is an important consideration in any building project in our region, destruction of a skylight by hurricane is something which would not ordinarily happen unless the designer was negligent in his/her duty to plan for a hurricane of ordinary strength.

Further, we find from the context of GMA's relationship with Blue Pacific that GMA was responsible to supervise the installation of the skylight in accordance with its plan. The fact that GMA had sole supervisory control of the design and installation of the skylight compels the conclusion that explanations for the destruction of the skylight, other than GMA's negligence, are sufficiently eliminated.

In summary: (1) GMA had a duty to design and supervise installation of

64

the skylight to withstand hurricane strength winds; (2) failure of a skylight to survive a hurricane of ordinary strength normally indicates a neglect of this duty; (3) GMA was responsible for both the design and the supervision of the skylight's installation; (4) a subsequent skylight withstood a hurricane of substantially greater force than the one that destroyed the skylight designed by GMA; and (5) the destruction of a skylight by hurricane is directly within the scope of potential injuries giving rise to the duty to design the skylight to withstand such disasters. Based on a theory of *res ipsa loquitur*, we find that GMA was negligent with respect to its duty to design and adequately supervise the construction of Plaza's skylight which was destroyed by Hurricane Ofa.

## THE MEASURE OF DAMAGES

■ Expectation damages are the proper measure of damages for an architect's malpractice.

> The appropriate measure of damage [for professional malpractice by an architect] is the reasonable cost of material and labor required to place the building in the condition contemplated by the parties at the time they entered the contract. The Bank is entitled to "the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste."

*Cann*, 503 F. Supp. at 441 (*quoting* RESTATEMENT (FIRST) OF CONTRACTS, § 346(1)(a)(i) (1932); citation omitted).

With respect to the replacement costs for the skylight, we are not persuaded that the payment of excise taxes by Blue Pacific in the amount of $558.00 was legally required. Any remedy for payment of such taxes is against the American Samoa Government and not GMA. We therefore decrease Blue Pacific's requested damage award by that amount, but require GMA to pay Blue Pacific $20,900 in damages for negligence in the design and construction supervision of the original skylight at Plaza's office building.

Judgment shall enter accordingly.

It is so ordered.