[No. 12549.  Department Two.  December 15, 1915.]

SCHOOL DISTRICT No. 172 OF KING COUNTY, *Respondent*, v. TIMOTHEUS JOSENHANS *et al.*, *Appellants*.[1]

CONTRACTS—BUILDING CONTRACTS—PLANS—ACTION FOR BREACH—EVIDENCE—SUFFICIENCY.  A finding that an architects' contract to furnish plans for a school building was breached by failure to require sufficient collar beams to support the roof, is sustained where the only requirement as to collar beams for a roof covering a structure 32x83 feet was that they be of 2x6 timber, there was a dispute as to how many this indicated, and witnesses testified that it would not be strong enough without collar beams, and the roof collapsed under a weight of snow.

SAME—BUILDING CONTRACTS — PLANS — PERFORMANCE OR BREACH. Under an architects' contract to furnish plans for a building and award the contract on a percentage basis, and superintend the work and make inspections for $10 a trip, the contract for the work providing that the work be done to the satisfaction of the architects, the architects are required to make whatever inspection is necessary, and their final certificate is evidence that the work was completed to their satisfaction, rendering them liable for damages on account of a defective roof insufficiently supported for want of sufficient plans.

SAME — BUILDING CONTRACTS — ACTION FOR BREACH — DEFENSES—RELIANCE ON PLANS.  Where architects were employed to furnish plans for a school building and superintend the construction, and certified that the building was completed in accordance with the plans, the school directors were entitled to rely on the sufficiency of the construction, although they knew the roof was not provided with collar beams and should have known that such construction was faulty; hence their reliance thereon, even after a fall of snow caused the roof to spread, will not defeat an action for damages on account of the faulty construction by the architects.

SAME — BUILDING CONTRACTS — PERFORMANCE OR BREACH — SUFFICIENCY OF PLANS—EVIDENCE.  In an action against architects for damages through the faulty construction of a roof which collapsed under a weight of snow, the architects are liable where it appears that the roof was insufficient to sustain a weight estimated at nine inches on other roofs and ten inches on the ground, and a depth of thirty-six inches on the ground was not more than should have been reasonably anticipated.

[1]Reported in 153 Pac. 326.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—MATERIALITY. A new trial for newly discovered evidence is properly denied where the new evidence would not have authorized a recovery.

DAMAGES—MEASURE—BREACH OF CONTRACT. The measure of damages in an action against architects for the faulty construction of the roof of a schoolhouse which collapsed under a fall of snow. the school directors not knowing that the roof was improperly constructed, is the actual loss sustained by reason of the breach, and not the cost of making the building conform to the plans, nor the diminished value.

SAME—MEASURE—BREACH OF CONTRACT—EVIDENCE—SUFFICIENCY. In such an action, evidence that it would cost $900 to reconstruct the second story, $300 to erect a temporary roof, and $320 to repair the damage to the lower story, sustains a judgment for $1,100, where the defendants introduced no evidence of the actual cost of the temporary roof or repairs to the first story; the court not being bound by the estimates of plaintiff's witnesses.

Appeal from a judgment of the superior court for King county, Ronald, J., entered June 16, 1914, upon findings in favor of the plaintiff, in an action for damages, tried to the court. Affirmed.

*Willett & Oleson* and *L. E. Kirkpatrick*, for appellants.

*Weter & Roberts*, for respondent.

PER CURIAM.—Some time in the summer of 1911, appellants, architects in the city of Seattle, entered into an oral contract with the directors of the respondent school district (hereinafter referred to as the respondents) to draw the plans for a two-story frame schoolhouse to be erected at Cedar Falls, to receive bids and award the contract for the construction thereof, and to exercise a certain supervision over the work the exact nature of which is in dispute. For drawing the plans, they were to receive three per cent of the contract price of the building; for receiving bids and awarding the contract, one-half of one per cent; and for making inspection, $10 and expenses for each trip. The plans were drawn in August, 1911, the contract awarded on September 7, and the building completed, with the exception

of the finishing of the second story, which the contract provided was to be roughed in only, some time between November 20 and 23, 1911.

On the evening of January 13, 1913, the upper story of the building collapsed under the weight of snow which had accumulated on the roof, leaving the first story standing practically unharmed, except for some damage to the plastering. Soon after the collapse, the directors built a temporary roof over the remaining first story, and commenced this action to recover from the appellants damages for the failure of the building, alleging that the collapse was due wholly to the negligence of appellants in the preparation of the plans and superintending the construction of the building; the specific charge being that the plans and specifications did not provide for, and the building did not have when completed, a roof sufficiently strong to carry the load which it should reasonably have been foreseen it would be obliged to carry. The trial court found that the negligence of the appellants was the cause of the collapse, and awarded damages of $1,100.

The issues raised on this appeal are almost entirely questions of fact; consequently it will be necessary to discuss the evidence at considerable length. A logical disposition of the issues would seem to require answers to the following questions:

(1)   Was the building faultily planned and constructed?

(2)   If so, were the appellants responsible for the faulty construction?

(3)   Did any acts of the directors contribute to the collapse and release the appellants from liability?

(4)   Was the collapse due to the alleged faulty construction or to unusual conditions which the appellants could not reasonably have been expected to foresee?

(5)   Did the court correctly determine the damages?

I.   The only particular in which it is claimed the construction was faulty is that the roof was insufficiently braced.

The roof was an ordinary hip roof, covering a structure 83 feet by 32 feet, with gables approximately thirty feet wide at the center, both front and back, and at the intersection of the ridge boards of the main roof and of the gables, was a belfry. The evidence of inferior construction was that an insufficient number of collar beams had been used on the rafters, thus allowing the roof to spread apart under the weight of snow and push out the side walls. The respondents' witnesses testified that there were only four or five collar beams used, and these were placed near the apex of the roof. The only requirement in the specifications for collar beams was that they should be of 2 x 6 timber. Mr. Allen testified that, in the absence of any specification requiring a definite number to be used, this would indicate a collar beam on every pair of common rafters; while Mr. Cronin, the contractor, testified this would indicate collar beams wherever necessary. Witnesses for the school district testified that the roof without collar beams would not be strong enough to withstand the load it should be expected to carry; while Mr. Allen testified that, even without collar beams, it would stand up under any except an extraordinary load. The trial court found that the roof did not have adequate support, and we do not find that his conclusion is not supported by the preponderance of the evidence.

II. The next consideration is whether the appellants were responsible for the faulty construction. They contend that the roof as planned was strong enough for the building, and that they did not agree to superintend the construction to the extent of guaranteeing that the building was put up according to the plans and specifications. The respondents contend that the contract was that the appellants were to inspect the building as often as necessary, while the appellants contend that they were to inspect only when called upon by the directors, and that the certificates of completion issed during the progress of the work were issued only to enable the contractor to secure his money, and not as evi-

dence that the work had been satisfactorily completed. The contract between the contractor and the school district provided that the contractor should perform all the work to the satisfaction of the architects, and, as this contract was drawn by the appellants for the directors, we feel that the trial court was justified in concluding that the appellants were to make whatever inspection was necessary, and that the final certificate was evidence that the work had been completed to their satisfaction, although the bill rendered by the appellants upon the completion of the work showed that but two trips of inspection had been made, the second over a week before the building was finished.

III.   On behalf of the appellants, it was shown that the respondents knew that the roof was not provided with collar beams, and that they should have known that the lack of them rendered the roof unsafe, but that this was not called to the attention of the appellants. If we accept the finding that the architects were paid for and did superintend the construction of the building, and that they certified the building as completed in accordance with the plans and specifications, then the respondents would be entitled to rely on the sufficiency of the construction, and although they may have detected what seemed to them to be faulty construction, they would be justified in relying on the appellants' judgment that it was a proper construction, as they had engaged the appellants to see that the construction was correct. Nor does the fact that the respondents knew that the roof was spreading shortly before the collapse, and that they took no steps to remove the snow, excuse the appellants, as it is not shown that respondents knew of any immediate danger, but were relying on the roof as constructed being sufficient to sustain its load.

IV.   However, all these facts will not avail the respondents unless the strain to which the roof was subjected was one which the appellants should reasonably have expected, as all the evidence that the building was negligently constructed

must rest on an ultimate finding that it collapsed under a load which appellants should have anticipated. The exact depth of snow on the roof at the time of the collapse was not stated by any of the witnesses, but respondents' witnesses testified that on other roofs it was approximately nine inches deep, and about ten inches on the ground. The appellants introduced the records of the U. S. Weather Department for the western slope of the Cascades, to show that unusual snow conditions prevailed at Cedar Falls on January 13, 1913, when the building collapsed. The trial court found that the depth and weight of snow on the roof were no more than the appellants should reasonably have anticipated the building would be expected to support.

Appellants, in moving for a new trial, made affidavit that they had been unable to discover before the trial any satisfactory evidence as to the depth of the snow, and that they had been taken by surprise at the testimony that the records for Cedar Lake, several miles further up the mountains and several hundred feet higher in altitude, which they introduced, could not be relied upon to show conditions at Cedar Falls, but that they have since discovered that the Milwaukee railroad agent at Cedar Falls kept records of the actual snowfall, and that, if a new trial were granted, these records would be produced to show that there were thirty-six inches of snow on the ground when the schoolhouse fell, which would indicate that the weight on the roof was much greater than as found by the court. The motion was denied by the court, the court stating that he would make no finding as to the depth of the snow when the building collapsed; but he did find that the depth and weight were not more than the appellants should have anticipated. It does not appear to us, as it evidently did not to the trial court, that a depth of thirty-six inches on the ground, conceding that the appellants could satisfactorily prove that fact, would indicate a depth of snow on the roof which appellants should not reasonably have expected and prepared against in planning the roof. This

being true, there was no abuse of discretion in the refusal to grant a new trial.

V.    The appellants' most serious contention is that the trial court erred in fixing the damages at $1,100; first, on the ground that the proper measure of damages was not employed, and no account taken of the respondents' failure to minimize the damages by remedying the defects in the roof; and second, that there was no competent evidence on which the award could be made.    The appellants contend that the proper measure should be the cost to the respondents of completing the building to make it safe, or the difference between the value of the building as actually completed and as it should have been completed; and the cases cited seem to sustain the rule when faulty construction is set up as a defense in an action by the contractor to recover for the construction, or in an action by the owner for damages for failure to complete the building according to the plans. This rule, if applied to this case, however, must be founded on the idea that the respondents knew that the specifications required collar beams and the building was not properly constructed without them, and should have either remedied the defect or notified the appellants to do so, and we have not found either that they knew the absence of collar beams was a defect or that they were obligated to notify the appellants that a sufficient number had not been used.

In the cases cited, the only damage shown was either the cost of making the building conform to the plans or the lessened value by reason of the faulty construction; while in this case the damage is not the cost of completing the work to make the building conform to the plans, as we have found that the respondents did not know that it was improperly constructed, nor the diminished value, for the defect could have been easily remedied, and the former rule would, therefore, be applicable to the exclusion of the latter.    In the cases cited, the measure of damages was proper; it compensated the injured party for the damages he had sustained.

And the measure here applied must accomplish the same end. We are of the opinion that the appellants themselves have cited the true rule which, continuing their quotation, is stated in 13 Cyc. 156, as follows:

"The general rule as to the measure of damages in case of a breach of contract, where there is no bad faith or fraud in evidence, is the amount of damages which naturally result or flow from the breach complained of; and must be such as the parties contemplated as a probable consequence of a breach, and which are capable of being reasonably ascertained. In other words the measure of damages is the damages which actually result from the breach, and which will compensate the party for the injury sustained, together with the expense or cost to which he may have been subjected as a consequence of the breach. In such actions the question is not what the plaintiff paid because of the breach but the value of that for which he paid."

The damages awarded in this case, then, must be the "damages which actually resulted from the breach" of the appellants' contract to furnish plans for, and approve the construction of, a building which would meet the conditions expected of it. The only testimony of damages sustained was given by witness West for the respondents, that it would cost $900 to reconstruct the second story, $300 to erect a temporary roof such as respondents had erected, and $320 to repair the damages to the lower story. The items for cost of a temporary roof and repair to the lower story are challenged on the ground that the actual cost of the repairs should have been given instead of opinion evidence of their approximate cost, and the entire award is challenged because it is not the result obtained by adding these three items or any two of them. The appellants introduced no evidence of the cost of these repairs, and demanded no evidence of the actual cost of the temporary roof or repairs to the first floor. They cannot then complain because the trial court relied upon the testimony of respondents' witnesses. Nor is the award improper because it does not coincide with the only

testimony produced. With the evidence before him, the trial court might well find that the estimate was excessive and not award the full amount asked, and as respondents do not complain of the amount, the appellants are in no position to do so.

As stated at the outset, the questions in this case are almost entirely of fact, and we are of the opinion that the findings of the trial court are sustained by a preponderance of the evidence, and that he correctly determined the damage. The judgment is therefore affirmed.