Robert A. BELL and Robert Bell
Associates, Inc., Appellants,

v.

Raymond M. JONES, Individually and
t/a R.M. Jones & Associates,
Consulting Engineers, Appellee.

Raymond M. JONES, Individually and
t/a R.M. Jones & Associates,
Consulting Engineers, Appellant,

v.

Robert A. BELL and Robert Bell
Associates, Inc., Appellees.

Nos. 84–1755, 85–23.

District of Columbia Court of Appeals.

Argued Sept. 24, 1985.
Decided Dec. 31, 1986.
As Amended April 14, 1987.

Suzanne McQueen Caldwell, with whom William Caldwell, Washington, D.C., was on the brief, for appellants and cross-appellees Robert A. Bell and Robert Bell Associates, Inc.

James C. Gregg, with whom Vicki J. Hunt, Washington, D.C., was on the brief, for appellee and cross-appellant Raymond M. Jones.

Robert Acker, Washington, D.C., filed a brief for the District of Columbia Land Title Ass'n as amicus curiae.

Before FERREN, TERRY and ROGERS, Associate Judges.

TERRY, Associate Judge:

Robert A. Bell, an architect, and Robert Bell Associates, Inc., a corporation formed to purchase certain property in Georgetown and to construct eight town houses on that property, filed this negligence action against Raymond M. Jones, a registered professional engineer who does business as a surveyor in the District of Columbia un-

der the name of R.M. Jones & Associates, Consulting Engineers. Bell[1] alleged that Jones prepared a "plat of survey" which erroneously represented the location of property lines and corner angles. Bell relied on this survey to draw architectural plans, but because of Jones' errors, Bell's construction costs were substantially increased. In this action Bell sought to recover those increased costs. After a nonjury trial, the court found that Jones was negligent, but also found that Bell was contributorily negligent and hence could not recover. Both parties appeal.

Jones contends on appeal that the trial court erred in ruling that Bell had established the appropriate standard of care for surveyors, in excluding Jones' proposed expert testimony on the standards and practices of the surveying profession in the District of Columbia, and in finding that he was negligent and that his negligence was a proximate cause of the increased construction costs to Bell. Bell contends that the trial court erred in finding that he was contributorily negligent in failing to tell Jones the uses to which he intended to put the survey and in relying on the survey to prepare architectural drawings and construction plans. Bell also asserts that D.C. Code § 2–2311(b) (1981), part of the Professional Engineers' Registration Act, bars the defense of contributory negligence; that even if he was contributorily negligent, the intervening negligence of Jones was the proximate cause of the increased construction costs; and that any contributory negligence on the part of Robert Bell should not be imputed to the corporate owner of the property, Robert Bell Associates, Inc.

We reject all of Jones' contentions. We also reject Bell's contention that he was not contributorily negligent when he initially failed to tell Jones the uses to which he intended to put the survey. However, we reverse the trial court's finding that Bell was contributorily negligent when he relied on the survey for architectural and con-

1. Throughout this opinion we shall use the name "Bell" to refer to both Robert Bell and Robert Bell Associates, Inc., except when the context makes clear, as in part I and most of part V, *infra*, that we are referring only to Robert Bell himself.

struction purposes,[2] and remand the case for further proceedings to ascertain the amount of Bell's damages.

## I

On November 7, 1978, Robert Bell telephoned Jones and hired him to survey a piece of property known as Lot 822, Square 1255, on Volta Place in Georgetown. Bell and other investors intended to purchase the property, to construct six new town houses on it, and to convert an existing building—a former police station—into two additional town houses. Bell wanted to have the property surveyed because a survey was required by the title company and the bank which was lending money for the project and because, as an architect, he needed a survey in order to design the buildings.

At trial neither party could remember the details of the telephone conversation. Jones recalled that Bell had asked him to make a survey of the property "with the idea of going to closing." To him this meant that Bell needed only "a piece of paper" showing that the property did indeed exist. Jones understood this to be the sole purpose of the survey, but he did not remember whether Bell specifically told him it was the sole purpose. Jones' handwritten notes of the conversation contained the phrase "plat of survey," but there was nothing in the notes to indicate the specific purpose for which the survey was to be used. Bell thought that the kind of survey he requested was self-evident, apparently unaware that there were different types of surveys.[3] The trial court found that the $625 cost of the survey was not high enough to alert Jones, the surveyor, that Bell, the architect, intended to rely on the plat of survey for architectural or construction purposes.

In performing his assignment, Jones reviewed the records of the District of Columbia Surveyor's Office, including a plat of survey prepared by that office. He also visited the site to make spot checks. When he completed his own plat of survey, Jones placed his Professional Registered Engineer's stamp on it, together with a certification which read as follows:

CERTIFICATION: I hereby certify that I have carefully surveyed the property as shown and described hereon, in accordance with D.C. Surveyor's records, and have located all of the existing improvements thereon by transit and tape survey, and that the corners have been found or placed as shown, and that there are no encroachments either way across the property lines except as indicated.

Signed: Raymond M. Jones

Despite the certification, Jones did not personally use a transit[4] in preparing the plat of survey, nor did Jones or his assistants use a transit to turn angles for the property corners. The court found that only spot checks of the record information were made, and that making spot checks was not the same as carefully surveying the property with a tape and transit (as the certification stated).

According to Jones, the certification meant only that he certified that measurements had been made in the field and that he had found them to be correct and in accordance with record information. There was no disclaimer or warning of any limitation on the use to which the survey could be put, although the evidence showed that such disclaimers are customarily placed on house location plats if they are not intended to be relied upon for certain purposes. The court found that Bell would not have used the plat for architectural and construction purposes if it had contained a warning or disclaimer.

In preparing architectural drawings for the proposed town houses, Bell assumed that the lot corners were right angles because the property lines were represented on Jones' plat of survey as being due

2. We therefore do not reach Bell's other claims of error.

3. Jones testified that a plat of survey is used "for financing [or] for title purposes," while a more detailed survey of boundaries and property lines would be used for construction documents or building permits. According to Jones, the latter would simply be called a "survey."

4. A transit (or transit compass) is an instrument used by surveyors for measuring angles.

north, due east, due south, and due west. Preparation of these drawings consumed approximately two man-years of work by Bell and his staff. There was no evidence that Bell specifically advised Jones that he was relying solely on the angle measurements supplied by Jones as a basis for architectural drawings or construction plans. The court found, nevertheless, that Bell and his staff relied on the plat of survey as a basis for the drawings because of the language of the certification and because it contained such exact measurements that it appeared to be reliable.

The bearings shown on the plat of survey drawn by Jones indicated that the north and south property lines were at 90–degree angles to the east and west property lines. In fact, two of the corners of the property were not 90 degrees as represented in the plat, but 90 degrees and 51 minutes. The evidence showed that Jones was aware that the corner angles were in fact 90 degrees and 51 minutes, even though he did not measure the angles himself, because this information was contained in the field notes of the District of Columbia Surveyor and also appeared in the notes which Jones made in November 1978. Jones acknowledged that this variance in the angles would be crucial for the construction drawings, and that if he knew his survey was going to be used as a basis for such drawings, he would be on notice that he should make an architect aware of the variance.

Jones' original plat of survey was completed on November 14, 1978. Bell requested some additional information, and Jones made revisions in December 1978, and again in January 1979. The conversation which led to the January revisions included a discussion of the fact that Bell was "doing working drawings" and had to know the relationship of the town houses to a garage or carriage house at the rear of the property. In February 1979, using the final revised survey which Jones had provided in January, Bell made a drawing of eight town houses, gave it to Jones, and asked him to add "spot elevations" or topographical information to it. Jones did so, and also located catch basins for sewer connections on the drawing, which he admitted he would not have done for a mere title survey. Jones acknowledged in his testimony that the original notes he made in November 1978 contained information other than what would normally be required for closing.

Bell first became aware of the imprecise angle measurements in October 1979 when Greenhorne & O'Mara, the surveyors for the contractor, Furman Builders, Inc., notified Furman that the architectural drawings were inaccurate and that it was therefore impossible to locate the footings for the construction. The building lines were off by six inches over the forty-six foot length of the new building. The architectural plans, having been drawn to an accuracy of one-fourth of an inch, were rendered substantially inaccurate by this error. In March 1980 Bell informed Jones of the error in the angles, which eventually resulted in a substantial increase in construction costs for the town houses.

Jones testified that he was aware of the minimum standards for land title surveys jointly published by the American Land Title Association and the American Congress on Surveying and Mapping. He agreed with those standards for a title survey, and he also agreed that when there is a discrepancy between the record bearings, angles, or distances and measured bearings, angles, or distances, both should be included on an engineer's drawing. He did not include the contradictory information in the drawing he prepared for Bell, however, because he considered the differences to be minor.

The trial court found that by not specifically asking Bell "the precise type of survey he was requesting on November 7, 1978," Jones "failed to exercise the reasonable care of a surveyor of ordinary prudence in the District of Columbia." The court also found that Jones "breached the applicable standard of care of a surveyor in the District of Columbia by certifying the ... plat of survey as he did." The court concluded that Jones' misunderstanding of the intended use of the survey "led him to be less precise in the angle measurements

given on the survey," thereby proximately causing construction losses to Bell. The court also concluded that the certification on the plat of survey, "among other things, caused [Bell] to rely on the survey for construction and architectural purposes, which proximately resulted in the increased construction costs and delays to [Bell]."

Having found Jones negligent, the court also found Bell contributorily negligent. It concluded that Bell "failed to exercise the reasonable care of an architect of ordinary prudence" by not advising Jones of the intended uses of the survey and by relying on the survey for architectural and construction purposes. The finding on which this conclusion was based was that "[a] reasonably prudent architect of ordinary skill in the metropolitan Washington area would not have relied on the plat of survey for construction drawings because the drawings did not indicate any contours, utilities, or the angles where each corner of the property breaks, and because [Jones] had not been specifically asked to prepare the plat for construction purposes." The court concluded that Bell's contributory negligence was a proximate cause of the increased construction costs, so that any recovery of those costs by Bell was barred.

## II

■ In a professional negligence action, the plaintiff "bears the burden of presenting evidence 'which establishes the applicable standard of care, demonstrates that this standard has been violated, and develops a causal relationship between the violation and the harm complained of.'" *Morrison v. MacNamara*, 407 A.2d 555, 560 (D.C.1979), quoting from *Kosberg v. Washington Hospital Center, Inc.*, 129 U.S.App.D.C. 322, 324, 394 F.2d 947, 949 (1968); *accord, e.g., Meek v. Shepard*, 484 A.2d 579, 581 (D.C.1984). This court has not had occasion to define a particular standard of care for surveyors; to that extent, this is a case of first impression in the District of Columbia. However, from our own cases involving other professions and from pertinent cases in other jurisdictions, we conclude that a surveyor must exercise that degree of care and skill which a surveyor of ordinary skill and prudence would exercise under the same or similar circumstances. *Paragon Engineering, Inc. v. Rhodes*, 451 So.2d 274, 275 (Ala.1984); *Ferrie v. Sperry*, 85 Conn. 337, 341, 82 A. 577, 579 (1912); *Palivoda v. Bruette*, 250 A.2d 808, 810 (Del.Super.1969); *Lawyers Title Insurance Co. v. Carey Hodges & Associates*, 358 So.2d 964, 967 (La.App.1978); *McKinnon v. Batte*, 485 So.2d 295, 298 (Miss.1986); *Simonds v. Board of Examiners for Land Surveyors*, 213 Neb. 259, 260, 329 N.W.2d 92, 94 (1983); *R.H. Bowman Associates, Inc. v. Danskin*, 72 Misc.2d 244, 245, 338 N.Y.S.2d 224, 226 (Sup.Ct. 1972), *aff'd*, 43 A.D.2d 621, 349 N.Y.S.2d 655 (1973); *Jarrard v. Seifert*, 22 Wash. App. 476, 479, 591 P.2d 809, 812 (1979); 58 Am.Jur.2d *Occupations, Trades, and Professions* § 78 (1971); Annot., 35 A.L.R.3D 504, 507 (1971); *see Meek v. Shepard, supra*, 484 A.2d at 581 (physicians); *Morrison v. MacNamara, supra*, 407 A.2d at 561 (physicians and other health care providers); *Noble v. Worthy*, 378 A.2d 674, 676 (D.C.1977) (architects).

■ In determining whether Jones was negligent, the trial court considered whether his actions were consistent with what "a surveyor of ordinary prudence in the Washington metropolitan area" would do under the same or similar circumstances.[5] Such language as this, used repeatedly by the court in its findings of fact and conclusions of law, makes clear to us that the court applied the proper standard of care in finding Jones negligent. This does not mean that we are adopting a "local" standard of care as opposed to a "national" one. To the contrary, this court in *Morrison v. MacNamara, supra*, 407 A.2d at 565, adopted a "national" standard for physicians and other health care providers, recognizing at the same time that the "lo-

---

5. Elsewhere in its findings and conclusions, the court referred to "a surveyor of ordinary prudence in the District of Columbia." For the purposes of this case, we see no meaningful difference between the District of Columbia and the Washington metropolitan area; nor did the trial court, apparently, since it used the two terms interchangeably.

cality rule" had always been "peculiar to medical malpractice." *Id.* at 564. We also held in *Noble v. Worthy, supra,* that "[a]rchitects are held to a standard of performance which requires them to employ that degree of skill and care ordinarily used by their colleagues," 378 A.2d at 676 (citations and footnote omitted), and in *Morrison* we declared, citing *Noble,* that "[a]rchitects are not held to a standard of conduct exercised by other architects in the District or a similar locality ... [but are] held to a national standard of care." 407 A.2d at 564. We agree with *Morrison's* gloss on *Noble,* and we see no reason to treat surveyors differently from architects and physicians. Accordingly, we hold that the standard of care by which the professional acts of surveyors are measured is a national standard, not a local or regional one.

We are left with the question of whether the court erred in seeking to confine its standard of care to the District of Columbia or the Washington metropolitan area. If it did, we are convinced that the error was harmless for two reasons. First, there was no evidence that the standard of care in the District was different in any respect from that which might be applicable nationwide; indeed, the evidence, scant as it was,[6] at least suggests that the local and national standards are the same. Second, all of the pertinent events in this case occurred in the District of Columbia, so that even if the court restricted the application of its standard to the District, neither party could have been prejudiced. Our decision in *Morrison* made clear that any non-medical standard of care in a professional negligence action must be national rather than local.[7] The court is presumed to have known the proper standard and applied it correctly. *See Hightower v. United States,* 117 U.S.App.D.C. 43, 46, 325 F.2d 616, 619 (1963); *cf. In re W.N.W.,* 343 A.2d 55, 58 (D.C.1975) (there is a "presumption that a trial court will disregard all

irrelevant matters in making its adjudications" (citation omitted)); *Riley v. District of Columbia,* 207 A.2d 121, 122 (D.C.1965). To the extent that this presumption has been overcome in the instant case, there is clearly no prejudice and hence no basis for reversal.

### III

Evidence establishing the standard of care for surveyors was provided by Bell's expert witness, Rodney Hansen, a surveyor with thirty-six years of professional experience. After his qualifications as an expert were accepted by the court, he was asked a long series of questions about what "a skilled surveyor of ordinary prudence," "an ordinarily prudent surveyor," "a reasonably prudent surveyor," or "a normally prudent surveyor" would do in circumstances like those presented in this case. Responding to those questions, he stated his opinion "with reasonable surveying certainty." We hold that Mr. Hansen's testimony, viewed as a whole, was sufficient to prove the standard of care as we have defined it here.

Jones contends that Mr. Hansen's testimony failed in three respects to establish the appropriate standard of care for surveyors. First, he argues that Hansen was not qualified to testify at all about the applicable standard of care. Second, Jones asserts that Hansen merely testified what he himself would have done if he had been in Jones' position, rather than what a reasonably prudent surveyor would have done. Third, Jones maintains that Hansen failed to establish the standard of care governing the preparation of plats of survey in the District of Columbia. We reject all three arguments.

"The decision whether to admit or exclude expert testimony is vested in the broad discretion of the trial judge, whose ruling must be sustained unless manifestly erroneous." *Adams v. United States,* 502 A.2d 1011, 1020 (D.C.1986) (citations omit-

---

6. We refer in particular to Rodney Hansen's testimony concerning the minimum standards for surveyors issued by the American Land Title Association.

7. "The locality rule is peculiar to medical malpractice." *Morrison v. MacNamara, supra,* 407 A.2d at 564.

ted). We find no abuse of discretion and no manifest error in the trial court's acceptance of Mr. Hansen as an expert or in its reliance on his testimony as a partial basis for its findings of fact. Jones' challenge to Hansen's qualifications as an expert is based on Hansen's testimony that he did ninety percent of his work in Maryland and Virginia rather than the District of Columbia, that he had never prepared a plat of survey to be used by an architect in the District of Columbia in making construction drawings, and that the only standards of care of which he was aware governing the conduct of surveyors in the District of Columbia were those established by the American Land Title Association. None of these factors, either singly or in combination, would justify a conclusion that Mr. Hansen was not properly qualified as an expert.

Hansen testified that he had been in the surveying profession for thirty-six years. He started "in the field" as a chain man and worked his way up through the ranks to field party chief, a position which he held for twelve years before switching over to office work. He is licensed in Maryland, Virginia, and North Carolina, but not in the District of Columbia because surveyors in the District are not licensed.[8] He is a member of the Maryland Society of Surveyors, the Virginia Association of Surveyors, the American Congress on Surveying and Mapping, the National Society of Professional Surveyors, and the Southeastern Association of Surveyors. He was president of the Maryland Society of Surveyors for four years and president of the Southeastern Association of Surveyors for four years. In 1983 he received the Surveyor of the Year award from the Maryland Society of Surveyors. He testified that through regular personal observations of many surveyors' work, he was familiar with the way in which other skilled surveyors in the Washington area prepare their surveys. He also said that he did conduct some business in the District of Columbia and was otherwise familiar with surveying standards in the District. On this record we find no abuse of discretion in the trial court's acceptance of Mr. Hansen's qualifications as an expert. *See Washington Metropolitan Area Transit Authority v. L'Enfant Plaza Properties, Inc.*, 448 A.2d 864, 867 (D.C.1982).[9]

 Jones contends that Hansen failed to establish the standard of care relating to the survey requested by Bell because he testified only what he would do under similar circumstances, not what a reasonably prudent surveyor would do. Testimony from an expert witness as to what he or she would do under similar circumstances is not sufficient to prove a standard of care. *See Meek v. Shepard, supra*, 484 A.2d at 581–582. But that was not the substance of Hansen's testimony. It is true that Hansen responded to several questions from Bell's counsel by saying what "I" or "we" would have done. When asked about his use of the word "we," however, he said that he was referring to "surveyors in general," and that in his previous answers he had been talking about "what surveyors normally do." Hansen also confirmed that his answers were based on his opinion "with reasonable surveying certainty." While his testimony might have been a bit clearer, we are satisfied that it met the requirements of *Meek v. Shepard.*

 Finally, Jones maintains that Hansen's testimony failed to establish any standard of care regarding the preparation of plats of survey in the District of Columbia. We read the record differently. Hansen testified that a plat of survey is "a drawing of a survey you actually [make] out in the field" and that the term is interchangeable

8. In lieu of licensing, the District of Columbia Code provides that all professional engineers must be registered, D.C.Code § 2–2304 (1981), and sets forth detailed requirements for registration. *Id.* § 2–2308.

9. The fact that Mr. Hansen never prepared a plat of survey for an architect in the District of Columbia does not detract from his qualifications to testify about surveying standards in the District because, as we have held in part II of this opinion, the applicable standard of care in this case is a national standard, not one that is limited to the District or the Washington metropolitan area.

with a "boundary survey".[10] He said that in preparing a boundary survey, a prudent surveyor would examine the records in the District of Columbia Surveyor's office, plot those deeds up in the surveys, go out into the field, "locate any field evidence" such as property corners and fences, make necessary computations, and match them with the deeds. Once the actual boundary corners were determined, a prudent surveyor would go back to the site and check the information, and then write a description of the property. To verify the measurements, a reasonably prudent surveyor would go to the site and turn the angles three or four times to make sure that the ones on the plat were correct. This testimony, in our view, was sufficient to establish the standards that a reasonably prudent surveyor would follow in preparing a plat of survey.

Jones' argument is beside the point in any event. Hansen testified that a reasonably prudent surveyor would ask the person for whom he or she is to do a survey the intended use of that survey, and that a reasonably prudent surveyor's certification would describe exactly what the surveyor did. This testimony, not the testimony concerning the proper method of preparing a plat of survey, formed the basis for the court's finding that Jones was negligent. See note 13, *infra.*

## IV

Jones contends that the trial court erred in refusing to permit him to testify as an expert witness on the subject of surveying. We find no error.

Whether a proffered witness is qualified to testify as an expert is a matter to be decided by the trial court in the exercise of its sound discretion. *McCrossin v. Hicks Chevrolet, Inc.,* 248 A.2d 917, 920 (D.C.1969). In the case at bar, Jones had been testifying about the facts of the case when his counsel asked him certain questions which could be properly answered only by an expert. The court, referring to our decision in *Beach v. United States,* 466 A.2d 862 (D.C.1983), prohibited Jones from answering these questions as an expert because up to that point he had been testifying as a fact witness. In *Beach* we held that the trial court had erred in permitting a party to present the same person as both an expert and a fact witness when other potential expert witnesses were available (although we also held that the error was harmless). *Id. at* 865. In the case at bar, because Jones did not show that he was unable to get another expert witness, and because Bell would have been prejudiced if the court had allowed Jones to answer the questions, we find no abuse of discretion in the trial court's ruling.

Jones argues that since a plaintiff in a civil case is sometimes allowed to rely upon the factual and expert testimony of a defendant, *see Abbey v. Jackson,* 483 A.2d 330 (D.C.1984), he should have been allowed to testify in both capacities in his own behalf. The rationale of *Abbey* does not apply to this case. When a defendant is called as an expert witness for the plaintiff, there is no danger that the defendant will be surprised by his own opinion. *Id.* at 335. The situation is not the same when the defendant testifies as an expert in his own behalf without giving advance notice to the plaintiff that he will do so;[11] in such a case the plaintiff may very well be surprised by the defendant's testimony. In the present case, Jones never identified himself before trial as an expert witness, and Bell did not depose him as such; consequently, Bell had no way of preparing to cross-examine Jones about his opinions as

---

**10.** Jones disputes this point. He testified that a "plat of survey" is a survey used for mortgage loan purposes, while a survey used for construction purposes is called a "boundary" or "property line" survey. Jones, however, was not qualified as an expert witness on the subject of surveying, see part IV, *infra,* and the court was free in any event to disregard his testimony.

**11.** Under Super.Ct.Civ.R. 26(b)(4), a party may require any other party, through interrogatories, to provide a list of all expert witnesses whom the latter party expects to call and to state the substance of the expert's anticipated testimony. Failure to respond to such interrogatories may result in a variety of sanctions, including an order prohibiting the expert or experts from testifying. *See* Super.Ct.Civ.R. 37(d). *But see Adkins v. Morton,* 494 A.2d 652 (D.C.1985).

an expert. To stretch our holding in *Abbey* to cover this case, as Jones now asks us to do, would result in real prejudice to Bell. We therefore reject Jones' claim of error.

V

Although this case was tried under several theories of liability, only two of those theories need concern us on appeal. First, Bell claimed that Jones had been negligent in failing to ascertain the precise type of survey he was requested to perform, and that this negligence was a proximate cause of the increased construction costs which Bell was suing to recover. Second, Bell claimed that Jones had negligently certified that he had "carefully surveyed the property" and had found the angles as shown in the plat of survey, and that this negligent certification was a separate and independent proximate cause of the increased construction costs.[12] Jones defended against both claims by alleging contributory negligence on the part of Bell. Under the first theory, we affirm the trial court's findings that Jones was negligent[13] and that Bell

was contributorily negligent. Under the second theory, however, we affirm the finding of negligence on the part of Jones, but we reverse the finding of contributory negligence on the part of Bell and remand the case to the trial court for a determination of damages.[14]

A. *Jones' failure to ascertain the purpose of the survey, and Bell's failure to inform him*

Bell's first theory of liability was that Jones failed to exercise the reasonable care of a surveyor of ordinary prudence when he neglected to ascertain the precise type of survey he was being asked to perform. Jones asserted in defense that Bell was contributorily negligent in failing to advise him of the intended uses of the survey. The trial court found that both parties were negligent under this theory and denied recovery to Bell. We affirm this ruling.

The finding that Jones was negligent in failing to ascertain the use to which Bell intended to put the survey was sup-

12. Bell also asserts that Jones was negligent in failing to tell him of the limited degree of detail in the plat of survey when Jones discovered that he was using the plat of survey to prepare construction drawings. The trial court made no findings or conclusions on this particular point. We need not reach it either, given our affirmance of the findings that Jones was negligent in other respects.

Both Bell and *amicus curiae*, the District of Columbia Land Title Association, argue that Jones failed to exercise the reasonable care of a surveyor of ordinary prudence in preparing the plat of survey for title purposes only—the purpose for which Jones understood the plat of survey was to be used. We agree with Jones that Bell failed to produce competent evidence to support this assertion. The document which both Bell and *amicus* contend establishes the standard of care which surveyors should follow in title surveys, the "Minimum Standard Detail Requirements for Land Title Surveys" adopted by the American Land Title Association and the American Congress on Surveying and Mapping, was never introduced into evidence. Accordingly, there was nothing before the court on which to base a finding that Jones violated the standard of care for preparing plats of survey for title purposes. On the other hand, we cannot uphold the trial court's finding that the angle error in the plat of survey was "not significant for mortgage financing or title purposes." John

Saulton, the expert architectural witness who testified that the plat of survey prepared by Jones would be acceptable to a bank for financing purposes, stated that he was relying only on general knowledge and did not have any expert opinion on that particular question. *See Noble v. Worthy, supra,* 378 A.2d at 676.

13. Jones also argues that his own testimony established a standard of care applicable to preparing a plat of survey and that he did not violate that standard. This argument is irrelevant. The basis of the trial court's finding that Jones was negligent was not that he violated any standard of care in preparing the plat of survey; indeed, Jones may very well have acted within the standard of care for the type of survey he thought he was hired to perform. The finding was predicated on Jones' failure to determine the precise type of survey Bell was requesting and on his later certification (see page 985, *supra*) that he had performed certain acts when in fact he had not.

14. Bell maintains that Jones may not rely on the defense of contributory negligence because such a defense would defeat the purposes of the Professional Engineers' Registration Act. *See* D.C. Code § 2–2311(b) (1981). The trial court did not reach this issue. We need not do so either, given our conclusion that Bell was not contributorily negligent in relying on Jones' certification.

ported by the evidence. A surveyor must exercise that degree of skill and care which a surveyor of ordinary skill and prudence would exercise under the same or similar circumstances. Rodney Hansen, Bell's expert surveyor witness, testified that an ordinarily prudent surveyor would ask his or her client what the purpose of the survey was. Other evidence showed that Jones failed to do so. It follows that there was sufficient evidence for the trier of fact to find that Jones was negligent. *See Psychiatric Institute v. Allen,* 509 A.2d 619, 623–625 (D.C.1986); *Spar v. Obwoya,* 369 A.2d 173, 175–179 (D.C.1977); *see also Rich v. District of Columbia,* 410 A.2d 528, 532 (D.C.1979) ("the law requires only that the evidence, when viewed most favorably for the plaintiff, indicate a reasonable probability of negligence on the part of the defendant" (citations omitted)).

■ The finding of contributory negligence on the part of Bell was also supported by the evidence. Specifically, the court found that Bell "failed to exercise the reasonable care of an architect of ordinary prudence when he failed to advise [Jones] of the intended uses of the survey...." Bell contends that this finding is erroneous because no standard of care exists in the practice of architecture which requires an architect to inform a professional engineer or surveyor of the particular uses which he or she intends to make of a survey, and because he did inform Jones in any event that he was using the survey for construction purposes. We reject Bell's contentions and uphold the trial court's finding.

■ In the District of Columbia, "[a]rchitects are held to a standard of performance which requires them to employ that degree of skill and care ordinarily used by their colleagues." *Noble v. Worthy, supra,* 378 A.2d at 676 (citations and footnote omitted); *see also* 5 Am.Jur.2d *Architects* § 8 (1962). At trial Jones' expert architectural witness, John Saulton, was asked whether "a prudent architect [would] inform his surveyor, when he is ordering a

survey, of the use to which the architect intended to put the survey"; to that question he replied, "Yes. Yes." The fact that Saulton went on to say that when he himself orders a survey from an engineer, he tells the engineer what he wants on the survey[15] does not detract from his testimony that a reasonably prudent surveyor would do the same thing. Earlier Saulton was asked whether there was "a practice with respect to determining what information will be contained on [a] topographical survey in the District of Columbia." He answered, "It's a practice for the architect to say or indicate what information ... he desires." We hold that Mr. Saulton's testimony, considered as a whole, was sufficient to prove that a reasonably prudent architect would inform a surveyor of the uses to which he or she intends to put the survey.

Bell argues that the existence of certain drawings, which indicate that Jones included some information on the plat of survey which was unnecessary for a "title" survey, proves that he did tell Jones that he intended to use the survey for construction purposes. We cannot agree. Bell testified that he could not recall specifying the type of survey he requested from Jones or informing Jones of the purpose for which he intended to use the survey. Jones testified, however, that he understood the survey was to be used for title purposes only. On this point the trial court evidently accepted the testimony of Jones, finding that it was Jones' "understanding ... that [Bell] intended to use the survey solely for mortgage financing and title purposes rather than as a basis for architectural or construction drawings." We must accept the court's resolution of factual disputes and uphold its findings unless they are clearly erroneous. D.C.Code § 17–305(a) (1981); *see Edmund J. Flynn Co. v. LaVay,* 431 A.2d 543, 546–547 (D.C.1981). Given Jones' testimony, we cannot overturn the court's findings on the basis of the drawings on which Bell relies.

15. Such testimony would not be sufficient to prove the standard of care. *See Meek v. Shep-*

*ard, supra,* 484 A.2d at 581–582.

We limit our affirmance, however, to the finding that Bell was contributorily negligent in November 1978 when he failed initially to tell Jones the intended purpose of the survey. Bell asserts that in January 1979, and again in February 1979, he made known to Jones that the survey was being used for construction purposes, and that on each occasion Jones made some revisions in the survey. Whether the mention of "working drawings," coupled with the request for more information about the carriage house and the rear wall, was sufficient to alert Jones in January (before any of the construction delays occurred) that the survey was being used for the preparation of construction plans [16] might be a critical issue in other circumstances. In this case, however, we need not decide the issue, because we hold as a matter of law that Bell was not contributorily negligent in relying on Jones' certification of the survey.

**B.** *Jones' certification, and Bell's reliance on it and on the survey*

Bell's second theory of liability was that Jones negligently certified that he had "carefully surveyed the property ... and that the corners [had] been found or placed as shown" in the plat of survey. In addition to denying negligence, Jones asserted that Bell was contributorily negligent in relying on the plat of survey for architectural and construction purposes.[17] The trial court concluded that Jones was negligent in certifying the plat of survey as he did, that the certification caused Bell to rely on the survey for architectural and construction purposes, and that the inaccuracies in the survey proximately resulted in the increased construction costs which Bell sought to recover. The court also ruled that Bell "failed to exercise the reasonable care of an architect of ordinary pru-

dence"—*i.e.*, that he was contributorily negligent—when he relied on the survey for architectural and construction purposes. We uphold the trial court's findings of negligence by Jones and of proximate cause, but we reverse the finding of contributory negligence by Bell.

### 1. *Negligence*

The trial court ruled that Jones "breached the applicable standard of care of a surveyor in the District of Columbia by certifying the November 14, 1978, plat of survey as he did." Rodney Hansen, Bell's expert surveyor witness, testified that several different certifications are used by surveyors in their work, and that the particular certification that a reasonably prudent surveyor puts on his or her survey describes what type of survey it is and what the surveyor is certifying. Hansen also testified that if a reasonably prudent surveyor were preparing a house location plat, a disclaimer would be placed on it stating that the plat "was not for determining the property lines ... [and] that the existence of the property corners [was] not guaranteed by this plat." No such disclaimer appears on Jones' plat of survey.

The certification that Jones placed on the plat of survey reads as follows:

I hereby certify that *I have carefully surveyed the property as shown and described hereon,* in accordance with D.C. Surveyor's records, and have located all of the existing improvements thereon by transit and tape survey, *and that the corners have been found or placed as shown,* and that there are no encroachments either way across the property lines except as indicated. [Emphasis added.]

This certification bears Jones' signature and is dated January 11, 1979, the date of

16. Bell testified that he told Jones in January that he was "doing working drawings" and needed to know the relationship between the proposed town houses and an existing carriage house at the rear of the property. Bell did not recall the details of this conversation, but he said that "[t]he substance of the conversation was that the rear wall did not seem to be accurate with the survey." Jones provided the requested information. In February Bell prepared a drawing of the town houses and asked Jones to add topographical data to it, which he did (for an additional charge of $75).

17. This claim is separate from, and independent of, Jones' claim that Bell was contributorily negligent in failing to inform him of the intended uses of the survey.

the final revised plat. When his lawyer asked him what he had certified, Mr. Jones replied, "I certified that measurements had been made in the field and we found them to be correct." Jones later admitted, however, that he had not carefully surveyed the property but instead had performed "spot checks," which he conceded were not the same as carefully surveying the property. Furthermore, the property lines were shown on the plat of survey as due north, due east, due south, and due west, which indicated to Bell that the corners were all 90–degree angles. In fact, two of the angles were 90 degrees and 51 minutes, which caused Bell's architectural drawings to be substantially inaccurate. The evidence showed that Jones knew the angles were 90 degrees and 51 minutes.

Although pertinent case law is sparse, there are several cases in which architects and surveyors have been held liable for damages resulting from negligent certifications. For example, the Supreme Court of Iowa has held that an architect owes a duty to his or her client "to exercise reasonable care to see that the work is done in proper manner with proper materials. Among other ways, this duty is breached when the architect negligently certifies completion of defective or incomplete work." *Roland A. Wilson & Associates v. Forty-O-Four Grand Corp.*, 246 N.W.2d 922, 925 (Iowa 1976) (citations omitted); *accord, e.g., General Trading Corp. v. Burnup & Sims, Inc.*, 523 F.2d 98, 101 (3d Cir.1975) (landowner may recover damages from architect when delay in construction of building resulted from architect's negligent certification of faulty construction work); *Hutchinson v. Dubeau*, 161 Ga.App. 65, 66, 289 S.E.2d 4, 5 (1982) (architect who certified the accuracy of a plat "in plain English" may be held liable to "purchasers damaged by reasonable reliance upon the plat"); *Newton Investment Co. v. Barnard & Burk, Inc.*, 220 So.2d 822, 824 (Miss.1969) ("An engineer or architect may be held liable for negligence in the improper issuance of cost or progress certificates" (citations omitted)); *Browning v. Maurice B. Levien & Co.*, 44 N.C.App. 701, 703–06, 262 S.E.2d 355, 357–358 (1980) (contractor's default on construction project resulted in foreclosure; architect held liable to property owners for negligent certification that contractor's work was "85.5 percent complete" when in fact it was not); *School District No. 172 v. Josenhans*, 88 Wash. 624, 626, 153 P. 326, 327 (1915) (trial court found that negligence of architects resulted in collapse of building under weight of heavy snow on roof; ruling that architects' certificate of completion "was evidence that the work had been completed to their satisfaction" upheld on the ground that owners of building were "justified in relying on the [architects'] judgment that it was a proper construction"); *see* Annot., 43 A.L.R.2d 1227, 1229–1232 (1955); *see also Rozny v. Marnul*, 43 Ill.2d 54, 66, 250 N.E.2d 656, 663 (1969) (liability of surveyor to property owners for negligent misrepresentation based in part on surveyor's "express, unrestricted and wholly voluntary 'absolute guarantee for accuracy' appearing on the face of the inaccurate plat"); *cf. Security National Bank v. Lish*, 311 A.2d 833, 834 (D.C.1973) ("One engaged in supplying information has a duty to exercise reasonable care"). Although these cases have arisen in various factual contexts, the common thread running through them is that a person who engages the services of a professional surveyor or architect has the right to rely on the latter's superior knowledge and skill "and to expect that such professionals [will] fulfill the duty of reasonable diligence, skill, and ability." *Jarrard v. Seifert*, 22 Wash.App. 476, 479, 591 P.2d 809, 812 (1979) (citation omitted). More specifically, when a surveyor or architect undertakes to certify that something has been done or not done, or done in a certain way, the client has a right to rely on the professional knowledge and skill of the surveyor or architect in making that certification. The surveyor's or architect's duty of reasonable care to the client is breached when such a certification is negligently made, and if that breach results in injury to the client, he or she may recover

damages. *Roland A. Wilson & Associates v. Forty-O-Four Grand Corp., supra.*[18]

In this case the evidence established that Jones certified he had done something that he actually had not done. Bell's expert witness, Mr. Hansen, testified that a reasonably prudent surveyor in similar circumstances would not have made such a certification. On this record we affirm the trial court's finding that Jones negligently certified the plat of survey which he gave to Bell. *See* D.C.Code § 17–305(a) (1981).[19]

### 2. *Proximate Cause*

We also uphold the trial court's finding that Jones' negligent certification was a proximate cause of the increased construction costs for which Bell sought recovery. "To establish proximate cause, the plaintiff must present evidence from which a reasonable [trier of fact] could find that there was a direct and substantial causal relationship between the defendant's breach of the standard of care and the plaintiff's injuries *and* that the injuries were foreseeable." *Psychiatric Institute v. Allen, supra,* 509 A.2d at 624 (citations omitted; emphasis in original).

Bell testified that he relied on the plat of survey because of the language of the certification and because the drawing contained such exact measurements that he had no reason to suspect that the document was not reliable. He also observed that the plat of survey did not contain a disclaimer or warning that it should not be used for construction purposes or as a basis for drawing architectural plans. The evidence showed that because the true angle of two of the property corners was almost a full degree more than the 90 degrees shown on the plat of survey, Bell's architectural drawings were rendered sub-

stantially inaccurate, and some of the construction work had to be redone. This evidence was sufficient to prove a direct and substantial causal relationship between Jones' breach of the standard of care in certifying the plat of survey and Bell's injuries.

The evidence also showed that Bell's injuries were foreseeable. Mr. Hansen, Bell's expert witness, testified that when making a certification, a prudent surveyor would try to describe exactly what he or she did and, when appropriate, would include a disclaimer that the corners of the property as shown on the plat were not guaranteed. This evidence, taken together with the language of the certificate and the evidence about the detail of the survey, was sufficient to prove that a reasonably prudent surveyor would have foreseen that the person for whom he or she was preparing the survey might rely on a statement included in the survey that the property had been carefully surveyed and the corners found or placed as shown. *Browning v. Maurice B. Levien & Co., supra,* 44 N.C.App. at 705, 262 S.E.2d at 358 ("when the defendants undertook to perform services for the bank, it could be reasonably foreseen that the owners of the property, the plaintiffs in this case, might rely on the certification of defendants"); *see Kendall v. Gore Properties, Inc.,* 98 U.S.App.D.C. 378, 387, 236 F.2d 673, 682 (1956) ("A defendant need not have foreseen the precise injury nor 'should [he] have had notice of the particular method' in which a harm would occur, if the possibility of harm was clear to the ordinarily prudent eye" (footnotes omitted)).

### 3. *Contributory Negligence*

The trial court concluded that Bell failed to exercise the reasonable care of an architect of ordinary prudence when he re-

---

**18.** We need not decide in this case whether, or to what extent, a third party may rely on such a certification.

**19.** We emphasize that we regard Jones' negligent certification as a breach of his professional duty of care to Bell, not a negligent misrepresentation by Jones to Bell. Negligent misrepresentation, at least in a commercial context, requires proof that the misrepresenting party "was

manifestly aware of the use to which the information was to be put and intended to supply it for that purpose." RESTATEMENT (SECOND) OF TORTS § 522, comment a (1976). The trial court in this case found that Jones was not aware of the intended use of the survey, and that finding was supported by Jones' testimony. Thus a claim of negligent misrepresentation would not lie.

lied on the plat of survey for architectural and construction purposes. The factual basis for the court's conclusion was its Finding of Fact No. 25, which was based on the testimony of John Saulton, Jones' architectural expert. Finding No. 25 reads as follows:

A reasonably prudent architect of ordinary skill in the metropolitan Washington area would not have relied on the plat of survey prepared by [Jones] for construction drawings because it did not indicate any contours, utilities, or the angles where each corner of the property breaks, and because [Jones] had not been specifically asked to prepare the plat for construction purposes.

We reverse the court's holding that Bell was contributorily negligent in relying on the plat of survey because Finding No. 25 for the most part lacks evidentiary support, and also because we conclude as a matter of law that Bell was not contributorily negligent to the extent that he relied on Jones' certification.

The finding that a reasonably prudent architect of ordinary skill "would not have relied on the plat of survey prepared by [Jones] for construction drawings because it did not indicate any contours, utilities, or the angles where each corner of the property breaks" is not supported by the testimony on which it is purportedly based, that of Mr. Saulton. On direct examination Saulton testified that the plat of survey prepared by Jones was not the type of survey that an architect would use in preparing contract documents because it did not have any utilities, contours, or a clear indication of where each corner breaks. On cross-examination, however, he said that he still agreed with his earlier statement, given in a deposition, that it would not be inappropriate for an architect to obtain "a boundary survey" initially and to "get the topographical information at some later stage in making the plans." As Bell rightly points out, whether the drawing does or does not depict the contours of the land has nothing to do with the accuracy of those features which are depicted. Saulton also agreed with his earlier statement that a reasonably prudent architect "could get an initial map which he had ... measured angles and so on but not the contours and elevation information," which could be supplied later. While he said that it "would [not] be as good" to get the information in two stages and that he personally would not do things that way, he never said that a reasonably prudent architect would not do things that way.

In addition, though Saulton testified that he would not rely on such information in applying for a building permit unless it were all together on a document with the stamp of an engineer because of his own potential liability, he did not say that a reasonably prudent architect would not rely on such information received in separate documents bearing a certificate that the property had been carefully surveyed and the corners found or placed as shown. We reiterate that what the witness himself would have done in similar circumstances does not establish the standard of care for the profession. *Meek v. Shepard, supra,* 484 A.2d at 581–582. Thus we conclude that there was no support in Mr. Saulton's testimony for the finding that "[a] reasonably prudent architect ... would not have relied on the plat of survey prepared by [Jones] because it did not indicate any contours, utilities, or the angles where each corner of the property breaks...."[20]

On the question of whether Bell was contributorily negligent when he relied on the plat for construction purposes "because [Jones] had not been specifically asked to prepare the plat for construction purposes," we hold as a matter of law that he was not. Simply stated, the fact that

---

**20.** With respect to the corner angles, Mr. Saulton testified that, after reading the certification and examining the plat of survey, his conclusion as an architect was that the surveyor had actually gone out into the field and turned the angles by transit, and that the angles were precisely 90 degrees. That is, of course, what Bell concluded as well. Thus Bell and Saulton were in agreement that the angles *shown on the plat* were 90–degree angles. Since no other witness testified differently, there was no evidence that the plat of survey prepared by Jones "did not indicate ... the angles where each corner of the property breaks...."

Jones "had not been specifically asked to prepare the plat for construction purposes" was irrelevant to the question of whether Bell could reasonably rely on the certification and on the angle measurements which Jones certified. We reach this conclusion for three reasons. First, Bell's failure to tell Jones the purpose for which the survey would be used did not cause Jones to make the certification; he did that on his own initiative. Thus there was no causal link between Bell's negligence in failing to tell Jones the intended purpose of the survey and the injury resulting from Jones' negligent certification; in other words, *that* negligent omission by Bell did not contribute to *this* injury. Second, no evidence, expert or otherwise, was introduced which showed that a reasonably prudent architect was not entitled to rely, for architectural and construction purposes, on a certification that the property had been carefully surveyed and the corners found or placed as shown, even though the surveyor had not been specifically asked to prepare the survey for construction purposes. Most importantly, Bell was not bound to anticipate negligent conduct on the part of Jones; on the contrary, he could reasonably assume that Jones would fulfill his duties, including the duty to exercise reasonable care in making the certification. *See Stager v. Schneider,* 494 A.2d 1307, 1311 (D.C.1985).

Accordingly, we hold that Bell was entitled to rely on Jones' certification that he had carefully surveyed the property and that the corners had been found or placed as shown, and hence on the corner angle measurements themselves as shown in the plat of survey. *See Jacka v. Ouachita Parish School Board,* 249 La. 223, 231, 186 So.2d 571, 575 (1966) (architect was entitled to rely on the accuracy of a survey in preparing construction plans even though the survey had been made five years earlier for the purpose of securing an FHA loan); *Browning v. Maurice B. Levien & Co., supra,* 44 N.C.App. at 705, 262 S.E.2d at 358 (reliance by property owners on architect's certification "could be reasonably foreseen"); *School District No. 172 v. Josenhans, supra,* 88 Wash. at 626, 153 P. at 327 (property owners held "justified" in relying on architects' certification that building construction had been completed to their satisfaction); *Jarrard v. Seifert, supra,* 22 Wash.App. at 480, 591 P.2d at 812 (developers "entitled to rely" on superior knowledge of architects and surveyors "and to expect that [they will] fulfill the duty of reasonable diligence, skill, and ability"); *see also Dessert Seed Co. v. Drew Farmers Supply, Inc.,* 248 Ark. 858, 865, 454 S.W.2d 307, 311 (1970) ("utmost reliance" can be placed on a certification). The trial court erred in ruling that Bell's reliance on the certification, and hence on the survey, amounted to contributory negligence.

## VI

We affirm the trial court's conclusion that Jones was negligent in failing to ascertain the purpose for which survey was to be used, and that Bell was contributorily negligent in failing initially to inform Jones of that purpose. However, given our holding that Jones was negligent in certifying the plat of survey as he did but that Bell was not contributorily negligent in relying on the angle measurements as they appeared in the certified plat of survey, we reverse the trial court's conclusion that Bell's contributory negligence bars any recovery by Bell in this action.[21]

Jones' liability having thus been established, we remand this case to the trial court for further proceedings to determine the proper measure of damages. We note that there was some evidence that not all of the construction delays and increased costs were attributable to the error in the plat of survey.[22] The trial court will, of

**21.** Because we hold that Bell was not contributorily negligent in relying on the certification and thus on the survey itself, we need not decide whether any contributory negligence on Bell's part may be imputed to the corporate owner of the property, Robert Bell Associates, Inc.

**22.** For example, there was at least one instance in which Greenhorne & O'Mara, the surveyors hired by the contractor, Furman Builders, alleg-

course, take this into account in calculating the amount to be awarded.

*Affirmed in part, reversed in part, and remanded.*

edly made an error in their measurements. A dispute between Bell and Furman over the cost of correcting this error and which of them

should pay for it resulted in some delay in construction.