Martin F. NOLAN, Appellant,

v.

Margaret C. NOLAN, Appellee.

Nos. 88–23, 88–1272.

District of Columbia Court of Appeals.

Argued Oct. 4, 1989.
Decided Jan. 5, 1990.

---

Charles H. Mayer, Washington, D.C., for appellant.

Daniel G. Grove, Washington, D.C., with whom David S. Kovach, was on the brief, for appellee.

Before STEADMAN, SCHWELB and FARRELL, Associate Judges.

FARRELL, Associate Judge:

This appeal arises primarily from a judgment for breach of child support obligations under a marital separation and property settlement agreement. The Superior Court Family Division found that appellant (Mr. Nolan) had breached the contract by failing to tender certain child support payments to appellee (Mrs. Nolan), and entered judgment for $30,566.84 in arrearage. Mr. Nolan challenges the trial court's rejection of his contractual and equitable defenses as contrary to the evidence. He also assigns as error the judge's exclusion from evidence, as a discovery sanction, of a letter which Mr. Nolan had failed to produce before trial and refusal to allow impeachment of Mrs. Nolan with that letter. We reject appellant's first contention, but we conclude that the record must be remanded for reconsideration by the trial court of its decision to exclude the letter, whose contents the judge declined to examine.[1]

---

1. We also reject Mr. Nolan's challenge to the procedure by which the trial court awarded attorney's fees to Mrs. Nolan. *See* part IV, *infra.*

## I.

Martin F. and Margaret C. Nolan were married in New York in 1962. During the marriage, they adopted three children, David, Ellen, and Peter. The Nolans began living apart voluntarily and continuously in June 1973. On November 22, 1974, they entered a comprehensive "Separation and Property Settlement Agreement," and on November 25, 1974, the Superior Court granted them a decree of absolute divorce. As the parties provided in the contract, the court did not incorporate or merge the separation agreement into the divorce decree.

The separation agreement provided that Mrs. Nolan was to have custody of the three children, and that Mr. Nolan was to provide child support as follows:

The Husband shall pay to the Wife the sum of Two Hundred Fifty Dollars ($250) per month per child, without deduction, for the support and maintenance of the children, which payments shall commence on December 1, 1974, and shall continue on the first day of each month thereafter, as to each child, until such child attains the age of twenty-one (21) years, dies, or becomes emancipated, whichever occurs first.

With regard to college expenses, the separation agreement provided that:

The Husband affirms his desire for the children to obtain suitable higher educations, and he agrees to pay for or contribute to college educations for each child to the extent his financial circumstances permit, subject to his prior approval of the selection of a school, which approval shall not be withheld unreasonably.

Further providing for the children's education, the parties agreed that if Mrs. Nolan sold the marital home,[2] which she held as tenant in common with Mr. Nolan after the divorce, or purchased his interest therein, the net equity proceeds of the sale of his interest were to be "held ... in an interest bearing account and shall constitute a college education fund for the minor children

of the parties." The agreement provided that any modification, waiver or amendment of the contract was ineffective unless in writing.

Mr. Nolan made child support payments to Mrs. Nolan as provided from November 22, 1974 through August 1983. In September 1983, David Nolan joined his father, who had relocated to Boston, to complete his senior year of high school at Boston College High School. The Nolans apparently agreed that Mr. Nolan would not be required to send monthly payments for David's support to Mrs. Nolan because Mr. Nolan would bear the son's tuition and living expenses during that school year. A December 13, 1983 letter from Mrs. Nolan's attorney to Mr. Nolan's attorney acknowledged that Mrs. Nolan did not object to this arrangement because David was residing with Mr. Nolan during that time. The letter added, however, that "we assume it is understood that the full monthly payments will be resumed once David is no longer residing with his father."

On May 28, 1984, at the conclusion of the 1984 school year, David returned to Washington to join his mother. In a June 15, 1984 letter to Mr. Nolan's attorney, Mrs. Nolan's attorney pointed out that Mr. Nolan had deducted David's child support from the June payment to Mrs. Nolan, and demanded that he resume payment of the full amount effective June 1, 1984, because David had since returned to Washington. The letter noted that the separation agreement did not contemplate such offsets in child support payments, but also recognized that Mrs. Nolan had not protested such reductions while David was living with his father. In late August 1984, Mr. Nolan paid Mrs. Nolan an amount representing support for David for the months of June, July and August 1984.

In the early Fall of 1984, David and the Nolans' daughter Ellen left Washington to attend college in Massachusetts. From the time the children began attending college in September 1984 until September 1987,

---

2. The contract gave Mrs. Nolan the right to reside in the home until the youngest child reached the age of 18, Mrs. Nolan remarried, or she elected to sell the home. Upon the occurrence of either of the two former events, the home was to be sold.

Mr. Nolan paid in full the tuition and living expenses for both and gave them spending money, except for a January 1987 payment for David's tuition and four payments in 1987 for his meals and housing, which were made by Mrs. Nolan. In addition, Mr. Nolan sent money directly to David during the summer months in 1985 and 1986, and to Ellen in the summers of 1985, 1986 and 1987. Mr. Nolan made no payments to Mrs. Nolan for David's support from September 1984 to September 1986.[3] He made only one payment, for December 1986, to Mrs. Nolan for Ellen's support for the period covering September 1984 through September 1987.

Mrs. Nolan's attorney wrote to Mr. Nolan's attorney on June 13, 1985, demanding that Mr. Nolan pay the amounts due for David's and Ellen's support for June, July and August 1985 directly to Mrs. Nolan, but the letter was silent on Mr. Nolan's failure to tender the amounts due for the months the children were attending college.[4] The June 13, 1985 letter stated that Mr. Nolan had agreed to make the summer payments, but wanted to make them directly to the children, and that this arrangement was contrary to the separation agreement between the parties. Mr. Nolan's position is reflected in a letter to Mrs. Nolan dated July 10, 1985, in which he stated:

> The tuition costs for David and Ellen amount to $20,000 annually. Since I try to provide some money for them during the school year and since I bear these tuition costs alone, you may see why I think full child support for their summers is a bit much.

All of this comes from a finite source. It is good that in a year's time or so, the childrens' educational needs will be provided for in a trust fund from the sale of the house. From what I understand of Washington real estate prices, the sale ought to be helpful in that regard. I hope you agree.

Mrs. Nolan testified at trial that she wrote several letters to Mr. Nolan demanding payment of child support as provided in the agreement, but only one, offered by the husband, was in evidence at trial. This handwritten card dated May 16, 1986, stated in pertinent part:

> Please also send child support *exactly as stipulated by* the legal contract—to *me* for each child that is home. For May, since Dave came home May 9, please send ⅔ of [$]515. And please send on June, July + Aug 1 the amount due each child—
>
> I know how you feel, but the law really just goes by the contract, as you know. After June 7, we have *no income* here.... [Emphases in original.]

On August 14, 1986, Mrs. Nolan filed the instant suit alleging breach of contract and seeking judgment in the amount of $28,085.00 for arrearage in child support as of August 1, 1986 and an order for specific performance; an order staying the sale of the house until the action for arrearage was resolved and a declaratory judgment that any arrearage be offset against the proceeds of the sale of the house in the event Mrs. Nolan elected to sell; and attorney's fees as provided by the contract.[5]

---

**3.** David reached the age of 21 in October 1986, terminating his father's support obligation to him.

**4.** Mrs. Nolan's attorney customarily sent Mr. Nolan's attorney letters on December 1 of each year to notify Mr. Nolan of the amount of annual cost of living adjustment in child support obligations dictated by the Consumer Price Index. In none of these letters in 1984, 1985 and 1986 did Mrs. Nolan's attorney assert that Mr. Nolan was delinquent in child support payments for the months comprising the academic years preceding the letters.

**5.** Mrs. Nolan's complaint included a claim for support payments for David encompassing the year that David was attending Boston College High School. Recognizing that she had specifically agreed to suspension of direct payments for that academic year, Mrs. Nolan did not pursue this claim at trial. She did not, however, amend her complaint to delete this amount from its *ad damnum* clause. At trial, Mrs. Nolan testified that the complaint had been so amended. An amended complaint was filed on September 5, 1986, but it still included a claim for support including this period. However, Mrs. Nolan introduced a document into evidence at trial purporting to be an accurate statement of the sum she was claiming as child support payments in arrears, which did not include a claim for the 1983–84 academic year.

At the three-day bench trial, Mr. Nolan asserted that the parties had agreed to modify the separation agreement to allow him to make direct support payments to the children while they were attending college, and that Mrs. Nolan had waived her right to receive those payments directly. He also interposed equitable defenses of estoppel—alleging that he had detrimentally relied on a telephone conversation with Mrs. Nolan in the Fall of 1984 in which she agreed to waive her right to direct payment of child support for David and Ellen while they were in school—and laches, claiming that the wife had unreasonably delayed her claim for support payments for the months covering the academic years in question.

During cross-examination of Mrs. Nolan, counsel for Mr. Nolan, relying on plaintiff's exhibit 7 setting out the claimed arrearage, *see* note 5, *supra*, inquired whether Mrs. Nolan claimed that Mr. Nolan was in arrears in the amount of $14,720 as of November 1985, to which she made an affirmative reply. Counsel then began to lay a foundation to impeach her trial testimony and the accuracy of the amount claimed due in the exhibit with a letter from Mrs. Nolan's attorney to Mr. Nolan's attorney, dated November 22, 1985, which referred to Mr. Nolan's refusal to pay *summer* support for David and Ellen and included the following sentence: "Mrs. Nolan calculates that, at the present time, [Mr. Nolan] is $500 in arrears." Opposing counsel objected before the document was tendered to the witness, arguing that the letter was within the scope of discovery requests for identification and production of documents to be used at trial, and that it had been deliberately withheld. Counsel for Mr. Nolan countered that he was not seeking to admit the document in his case in chief, but merely using it in cross-examination, and could not have anticipated nine months before trial when the discovery request was received that the letter would be necessary to cross-examine this witness.

The judge indicated his inclination to sustain the objection, but reserved a final ruling. He also refused an offer of proof from plaintiff's counsel. After later hearing oral argument from both parties, the judge sustained the objection. Later still he again refused a proffer, indicating that in view of his role as ultimate factfinder, he would not look at the letter before making his decision. He ordered that the letter be sealed in an envelope to preserve the record.

After the close of evidence, the judge made findings of fact and conclusions of law rejecting Mr. Nolan's modification, waiver, estoppel and laches defenses. He found that Mr. Nolan had breached his obligations to remit child support payments directly to Mrs. Nolan. The court also found Mrs. Nolan's accounting of the amount in arrears, which included payments for months during which the children were attending college, to reflect accurately the amount due. Accordingly, the court entered judgment in Mrs. Nolan's favor for $30,566.84 plus interest.

## II.

■ Mr. Nolan contends that the trial court's findings and conclusions rejecting his contractual and equitable estoppel defenses were contrary to the evidence. We summarize first the applicable legal standards. Although the dispute arose in a domestic relations context and was tried in the Family Division, the separation agreement was not merged into the divorce decree, and thus ordinary principles of contract law apply.[6] In the face of an agreement expressly setting forth the obligations of the parties, appellant bore the burden of persuasion on his defenses of estoppel, modification of the contract, and waiver of its provisions. *See Nat'l Rifle Ass'n v. Ailes,* 428 A.2d 816, 821 & n. 9 (D.C.1981) (defendant bears burden of

---

In his findings and conclusions, the trial judge accepted this document as Mrs. Nolan's accounting of arrearage.

6. *See Clark v. Clark,* 535 A.2d 872, 876 (D.C. 1987) (separation agreement not merged in final

divorce judgment governed by law of contract). *Cf. Hamel v. Hamel,* 539 A.2d 195, 199 (D.C. 1988) (merged agreement loses character as separate contract; becomes part of divorce decree).

proving additional agreement limiting contractual rights); *Chubb Integrated Sys. v. Nat'l Bank of Washington,* 658 F.Supp. 1043, 1050 (D.C.1987) (party raising defense of estoppel must prove its elements). Because this case was tried without a jury, this court, on appeal, may not set aside the judgment unless it is plainly wrong or without evidence to support it. D.C.Code § 17–305(a) (1989). *See also Williams v. Williams,* 554 A.2d 791, 792 (D.C.1989); *Clark, supra* note 6, 535 A.2d at 876. That standard means that if the trial court's determination is " 'plausible in light of the record viewed in its entirety,' we will not disturb [it] whether or not we might have viewed the evidence differently ourselves." *American Security Bank v. American Motorists Ins. Co.,* 538 A.2d 736, 741 (D.C.1988), *quoting Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

## A. Equitable Estoppel

■ Mr. Nolan argues that the court erred in failing to bar Mrs. Nolan's claim for arrearage under the doctrine of equitable estoppel. Appellant asserted below that he had relied on telephone conversations with Mrs. Nolan in the Fall of 1984 during which she agreed to waive support payments while David and Ellen were attending college in Massachusetts so long as he paid their tuition and expenses at college. A party raising equitable estoppel must show that he changed his position prejudicially in reasonable reliance on a false representation or concealment of material fact which the party to be estopped made with knowledge of the true facts and intent to induce the other to act. *Cassidy v. Owen,* 533 A.2d 253, 255 (D.C.1987). There must be a causal relationship between the alleged prejudice (here Mr. Nolan's expenditures) and the reliance on the estopped party's representations (here Mrs. Nolan's statements). *See In re Estate of Himmelfarb,* 345 A.2d 477, 483 (D.C.1975) (prejudice caused by detrimental reliance an element of estoppel).

■ The trial court concluded that the estoppel defense was deficient because Mr. Nolan had failed to establish that Mrs. Nolan made a representation upon which he relied to his detriment. It refused to credit Mr. Nolan's trial testimony that a Fall 1984 telephone conversation motivated his payment of the children's college and tuition expenses. The court based its credibility finding on (a) Mr. Nolan's prior deposition testimony, introduced at trial, in which he responded to a question whether Mrs. Nolan agreed to direct payment of child support to the children while they were at college by saying, "Oh I doubt it," and (b) his sworn interrogatories in which Mr. Nolan had stated that it was by agreement with *Ellen and David,* not Mrs. Nolan, that his support obligations had been modified, "Mrs. Nolan [having] sat back and done nothing about it." The existence *vel non* of an estoppel is an issue for the trier of fact, particularly when it turns on resolution of · conflicting evidence. *See United Sec. Corp. v. Verene,* 193 A.2d 429, 431 (D.C.1963). Here, the court resolved the conflict between Mr. Nolan's sworn statements and trial testimony against him. Substantial evidence supports the court's finding, and we cannot say that it was clearly erroneous.[7]

7. Appellant also asserted below that Mrs. Nolan should be barred from prosecuting her claim because she unduly delayed seeking back child support for the school years in question. To prevail on his laches defense, Mr. Nolan had to prove that he was prejudiced by Mrs. Nolan's undue and unexplained delay in bringing her action. *Clark, supra* note 6, 535 A.2d at 879; *Schmittinger v. Schmittinger,* 404 A.2d 967, 970 (D.C.1979); *Amidon v. Amidon,* 280 A.2d 82, 84 (D.C.1971).

The trial court found that Mr. Nolan had failed to establish undue and unexplained delay, concluding that a fourteen month period between Mr. Nolan's cessation of direct support payments and the filing of the action fell "well within acceptable bounds." Although the court's findings reflect an error in calculating the period of delay, as the record shows that payments ceased in September of 1984 and that Mrs. Nolan filed suit in August of 1986, we nonetheless agree with its assessment. Other cases involving suits for arrearage under separation agreements reveal the twenty-three month delay here to be relatively minimal. *See, e.g., Schmittinger, supra,* 404 A.2d at 968 n. 2 (five

## B. Modification and Waiver

Mr. Nolan further argues that, notwithstanding the court's finding concerning an oral modification or waiver by Mrs. Nolan, the documentary evidence establishes that she agreed to forgo direct child support payments as called for by the contract during the months David and Ellen were at college. Mr. Nolan relies on a series of letters between Mrs. Nolan (or her attorney) and Mr. Nolan, particularly letters dated June 13, 1985 and May 16, 1986, in which she made no objection to his failure to send child support payments to her during the college year. Mr. Nolan contends that the letters admit of only one inference: Mrs. Nolan understood his duty to pay child support to her to depend on whether the children lived at home, which amounted to a waiver or modification of the original agreement.

 The letters undeniably give us pause. If Mrs. Nolan believed that appellant had wrongfully withheld payments to her during the school year, one might reasonably expect her to have said so in the letters rather than, for example, to insist that he remit two-thirds of the support payment for May 1986 *because* David had come home on May 9. Moreover, the trial court's rejection of appellant's waiver/modification defense is made troublesome by its suggestion that no conduct other than express written modification of the agreement could change the provision calling for direct payment of child support to Mrs. Nolan[8]—a suggestion contrary to law. *See Clark, supra* note 6, 535 A.2d at 876 (oral modification of separation agreement valid despite provision in contract prohibiting such modifications).

We are persuaded, however, that at bottom the court assumed that the parties could modify the written agreement by subsequent conduct, including acquiescence, but found as a fact that Mrs. Nolan had never agreed to forgo direct child support payments as specified in the agreement. The court summarized the contract provisions setting forth dual obligations of appellant to pay child support to Mrs. Nolan until the children reached 21 *and* to contribute to their college education "to the extent his financial circumstances permit...." The court further reviewed the communications between the parties, including Mrs. Nolan's reminder to appellant after the suspension of payments in 1983–84 that the agreement did not contemplate such offsets and that she expected payments to resume to her after David stopped living with his father. Perhaps most significantly, the court found Mrs. Nolan's explanation at trial that "she was concerned with the immediate family needs" to be "a credible explanation for why her letters [*of June 1985 and May 1986*] demanded support only for the summer months" and not for the preceding school year. Mrs. Nolan had testified that at the time of the May 16, 1986 letter, for example, she was "out of a job" because the funding on which her job as teacher in a correctional institution depended had expired, so that "my whole focus ... was on the immediate crisis that I faced as my children came home."

As an appellate court, it is not our function to weigh the plausibility of this explanation for Mrs. Nolan's conduct. We may not set aside the trial judge's decision to credit her testimony that she did not intend to relinquish her rights under the original agreement unless we are left with the "definite and firm conviction that a mistake has been committed." *Cahn v. Antioch Univ.,*

years); *Amidon, supra,* 280 A.2d at 83 (seven years).

8. The court wrote:
 [T]he court should be chary of according great significance to [Mrs. Nolan's] silence for to do so is to create evidence from non-evidence. However, in this case, one in which the parties undoubtedly appreciate the importance of the written word [Mr. Nolan is a newspaper editor and Mrs. Nolan is an English teacher] and have agreed that "any modification, waiver, or amendment of any of the terms of this Agreement shall not be effective unless in writing," attaching significance to the plaintiff's silence is particularly undeserved.
 Elsewhere, the court wrote that, "just as the parties may agree on the terms of the contract, they may also agree on the procedure by which the contract may be modified."

482 A.2d 120, 128 (D.C.1984), *quoting Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969). On the record considered by the trial court, we do not have that conviction. Appellant bore the burden of proof that Mrs. Nolan had surrendered her right to receive child support payments—payments which the agreement obliged Mr. Nolan to make *in addition to* such contributions for college as he could afford. A conclusion that he had not met that burden is, on the record examined by the trial court, not clearly erroneous.

### III.

Mr. Nolan further contends, however, that the judgment for Mrs. Nolan is flawed by an erroneous evidentiary ruling by the trial court which entitles him at least to a new trial. As explained earlier, the court excluded from evidence, as a discovery sanction, the November 22, 1985 letter from Mrs. Nolan's attorney to counsel for Mr. Nolan referring only to the husband's failure to make summer payments and reciting that, by Mrs. Nolan's calculation, he

9. The letter, which began by informing Mr. Nolan of the change in his support payments for the coming year dictated by the Consumer Price Index, continued:

> Again, I ask for your assistance in convincing Mr. Nolan to make his payments timely and in accordance with the provisions of the Separation Agreement. I am advised that he refused to pay summer support for David and Ellen, although he did end up paying a portion of what was owed directly to Ellen. *Mrs. Nolan calculates that, at the present time, he is $500 in arrears.* His persistence in delaying these payments and in refusing to pay them to Mrs. Nolan has created significant financial hardship for her and for the children.
>
> Accordingly, we would appreciate Mr. Nolan's cooperation in making each payment in the appropriate amount to Mrs. Nolan on the first of each month hereafter in accordance with the terms of the Agreement. [Emphasis added.]

10. At the outset, we reject appellant's suggestion that Mrs. Nolan's discovery requests were too vague to encompass the letter. The letter reasonably could be identified by language in document production requests such as "documents not heretofore produced which support the claims you have made or positions you have taken in this case and which you expect to introduce into evidence"; "documents which ...

was $500 in arrears.[9] We are compelled to agree with appellant that the judge erred by failing to read the letter or to accept two proffers of what it would show, thus depriving himself of an adequate foundation upon which to consider factors relevant to the exercise of his discretion whether to impose discovery sanctions.

### A.

Mr. Nolan sought to use at trial a document that fell reasonably within the scope of several document production requests and an interrogatory he had been ordered to answer.[10] Seeking exclusion of the letter as a discovery sanction, counsel for Mrs. Nolan invoked Super.Ct.Civ.R. 26(f)(2), arguing that Mr. Nolan had violated a continuing duty to seasonably supplement his responses to interrogatories by failing to produce the letter. He contended that Mr. Nolan's responses, by identifying other documents and not objecting to the request, led opposing counsel to the misleading inference that no other documents upon which he would rely existed.[11] The

relate in any way to payments of your child support obligations"; and "documents ... upon which you intend to rely at trial...." Moreover, early in the case the court granted Mrs. Nolan's motion to compel discovery, ordering Mr. Nolan to answer pretrial interrogatories which included the following request:

> State whether it is your contention that there has ever been a written modification, waiver, or amendment of any of the terms of the agreement, and if that is your contention identify with particularity each and every writing or other document which reflects or relates to each and every modification, waiver or amendment.

While these categorical requests did not precisely identify the letter, the Superior Court discovery rules require no more than that "the request shall set forth the items to be inspected *either* by individual item *or by category,* and shall describe each item *and category* with *reasonable* particularity." Super.Ct.Civ.R. 34(b) (emphasis added). We agree with the trial judge that Mr. Nolan's failure to produce the document violated the discovery rules.

11. In reply to the interrogatory cited in note 10, *supra,* Mr. Nolan wrote:

> Yes. There was a letter from Peter R. Sherman, Esq. [then counsel for Mrs. Nolan] some time in 1983 or 1984 expressing approval of my non-payment to the plaintiff of child sup-

trial court found a violation of discovery and excluded the letter after declining to hear two proffers of its contents by Mr. Nolan.

A trial court has inherent power to protect the integrity of the discovery process by imposing a wide range of sanctions for a party's violation of the discovery rules, including the exclusion of evidence. *See Corley v. BP Oil Corp.*, 402 A.2d 1258, 1261 (D.C.1979) (expert testimony); *Hollins v. Sneed*, 300 A.2d 447, 449 n. 4 (D.C. 1973) (fact witness). *See also* Fed.R.Civ.P. 26(e) advisory committee's note. Whether to impose sanctions, and if so the nature of such sanctions, are matters committed to the trial court's discretion. *Lyons v. Jordan*, 524 A.2d 1199, 1201 (D.C.1987); *Corley, supra,* 402 A.2d at 1261. The court may exercise this discretion in a variety of circumstances, including when a party has failed to answer completely pretrial interrogatories, *see, e.g., S. Kann's Sons Corp. v..Hayes*, 320 A.2d 593, 596 (D.C.1974), or breached a continuing duty to seasonably supplement responses to discovery requests under Super.Ct.Civ.R. 26. *E.g., Corley, supra,* 402 A.2d at 1261; *Freedmen's Hospital v. Heath*, 318 A.2d 593, 595 (D.C.1974) (per curiam); *Hollins, supra,* 300 A.2d at 449 & n. 4. On appeal, we may disturb a discovery sanction only if the trial judge has abused his discretion by imposing "a penalty too strict or unnecessary under the circumstances." *Weiner v. Kneller*, 557 A.2d 1306, 1309 (D.C.1989),

*quoting Henneke v. Sommer,* 431 A.2d 6, 8 (D.C.1981).

■ The judge's discretion, however, is not unbounded; its exercise must be guided by the purposes and policies underlying the discovery rules. *See Weiner, supra,* 557 A.2d at 1311–12; *Corley, supra,* 402 A.2d at 1262. Our recent decision in *Weiner* articulates standards governing exclusion of evidence as a discovery sanction. 557 A.2d at 1309.[12] We held there that when evidence has been improperly withheld, the party seeking to introduce it must bear the burden of satisfying a preponderance of the following factors: 1) whether allowing the evidence would incurably surprise or prejudice the opposite party; 2) whether excluding the evidence would incurably prejudice the party seeking to introduce it; 3) whether the party seeking to introduce the testimony failed to comply with the evidentiary rules inadvertently or willfully; 4) the impact of allowing the proposed testimony on the orderliness and efficiency of the trial; and 5) the impact of excluding the proposed testimony on the completeness of the information before the court or jury. *Id.* at 1311–12.

■ We conclude that the trial court in this case could not properly weigh several of these factors without knowing what the November 22 letter showed.[13] The court imposed the "extreme sanction" of exclusion of evidence, *id.* at 1310 n. 5, even for purposes of impeachment on cross-examination,[14] without examining the document

---

port for our oldest child who was then living with me in Boston.

This was an apparent reference to the December 13, 1983 letter acknowledging the Nolans' arrangement regarding payments for David for the 1983 academic year. The response did not identify the November 1985 letter or any other documents.

**12.** Although *Weiner* involved the exclusion of expert testimony on a subject not identified in response to discovery requests, the standards drawn from existing case law in that decision are equally instructive on the issue of exclusion of documentary evidence not produced in discovery.

**13.** Although *Weiner* had not been decided as of the date of the Nolans' trial, that case did not modify existing law, but rather synthesized rele-

vant factors identified and relied upon in our prior decisions. *See, e.g., Bell v. Jones,* 523 A.2d 982, 990 (D.C.1987) (prejudice to party opposing introduction of evidence; ability of proponent to prove fact without the evidence); *Lyons, supra,* 524 A.2d at 1201, *citing Shimer v. Edwards,* 482 A.2d 399 (D.C.1984) (prejudice to opponent; willful noncompliance with discovery by proponent); *Corley, supra,* 402 A.2d at 1261 (prejudice and unfair surprise to opponent; impact on efficiency of trial process). *See also Regional Redevelopment Corp. v. Hoke,* 547 A.2d 1006, 1009 (D.C.1988) (willfulness; necessity of evidence to proponent's case; orderliness of trial).

**14.** While limiting a party's right to cross-examination as a discovery sanction is not without precedent, *see, e.g., Frankel v. Stake,* 33 F.R.D. 1, 2 (E.D.Pa.1963); *Combellick v. Rooks,* 401 S.W.2d 460, 464 (Mo.1966), impeachment serves

or allowing counsel to make a proffer. We are mindful of the court's reason for not doing so; as trier of fact, he was concerned that the letter not influence his ultimate judgment if he determined to exclude it. However, as between that risk and the danger of excluding the letter on an inadequate factual basis, we prefer to trust the ability of trial judges, which we have often acknowledged, to separate admissible from inadmissible evidence in rendering judgment on the merits.[15] The key factors the court was obliged to consider included "the importance of the evidence to its proponent," id. at 1311, quoting Johnson v. H.K. Webster, Inc., 775 F.2d 1, 8 (1st Cir.1985); without knowledge of the letter's contents, the court could not meaningfully weigh that and other factors relevant to the exercise of its discretion.[16] See Johnson v. United States, 398 A.2d 354, 364 (D.C. 1979) ("[a]n informed choice among the alternatives requires that the trial court's determination be based upon and drawn from a firm factual foundation"). The court abused its discretion in excluding the letter without informing itself of what the document would show.

### B.

Not every improper exercise of discretion is reversible error, however. Id. at 366. Mrs. Nolan argues that even if the letter should have been admitted in evidence, its exclusion was harmless because "[t]he excluded letter is simply one more letter seeking support for the summer months," and hence would have added nothing to Mr. Nolan's defense of waiver. The matter, however, is not that simple. It is true that the letter, like the others that were admitted in evidence, pointed out appellant's failure to pay summer support; and the fact that this letter, unlike the others, placed a dollar amount on the arrearage "at the present time" might not itself add appreciably to Mr. Nolan's defense. But what distinguishes the letter significantly from the others—at least on its face—is that it was written after the summer months at a time when Mrs. Nolan's explanation for her narrow demand in the other letters arguably did not apply, i.e., that she was facing an immediate crisis with the children coming home and presumably did not want to jeopardize summer support by raising the issue of a very large arrearage for the school months. As mentioned earlier, the trial court found this explanation credible, and appeared to give it significant weight in rendering judgment for Mrs. Nolan.

In these circumstances, we cannot agree with Mrs. Nolan that the letter, assuming the court had considered it, necessarily would have played no role in its ultimate judgment. The evidence supporting judgment for Mrs. Nolan was not overwhelming; a letter impeaching her explanation for her limited demands could reasonably have led the court to a different result. It thus becomes important for us to know whether the court, upon consideration of the letter's contents, will adhere to its decision to exclude it as a discovery sanction. We do not foreclose that possibility, for a finding that the proponent of evidence would be prejudiced by its exclusion is only one of the factors to be weighed under

---

a different function in the truth-finding process than introduction of substantive evidence. It is the means by which affirmative proof is tested, and can expose evidence put before the fact-finder as false, misleading, or the product of insufficient knowledge or faulty memory. Notably, the fifth Weiner factor considers the impact of excluding the proposed evidence on the completeness of the information before the court or jury. 557 A.2d at 1312.

15. See Singletary v. United States, 519 A.2d 701, 702 (D.C.1987); In re L.J.W., 370 A.2d 1333, 1336 (D.C.1977), quoting C. McCormick, McCormick On Evidence, § 60, at 137 (2d ed. 1972); In re W.N.W., 343 A.2d 55, 58 (D.C.1975) (discussing presumption that judge in bench trial will disregard inadmissible evidence or irrelevant matters in reaching decision).

16. The judge's remarks indicate that he knew from the course of the trial that the letter would in some manner impeach Mrs. Nolan's account of the support payments owed her. Indeed, he surmised that if it should contain a categorical admission by Mrs. Nolan that the payments should be made directly to the children, it would be "about as damaging a piece of evidence as I can think of." Inferences as to the meaning of the evidence, however, cannot substitute for a factual basis for imposing a discovery sanction.

*Weiner.*[17] We hold only that the court must make that determination on an adequate factual basis.

We therefore elect to remand the record to the trial court to allow it to reconsider the exclusion issue after taking account of the letter's contents. If the court adheres to its imposition of the sanction, it should return the record to us for review of that determination. Alternatively, should the court reverse its evidentiary ruling and consider the letter on the merits but conclude that its judgment for Mrs. Nolan shall stand, it should state reasons for that disposition and forward the record to us for review of the judgment on the supplemented record.[18] Finally, if the court decides to reverse its judgment on the merits, it should inform this court of its intention so that the case can be remanded to it for that purpose. *See Smith v. Pollin,* 90 U.S.App. D.C. 178, 179–80, 194 F.2d 349, 350 (1952) (jurisdiction remains in court of appeals until disposition of appeal; grant of relief by trial court in the interim requires remand of case). Our opinion is not meant to signal a view on any of these options.

## IV.

Mr. Nolan challenges the procedures by which the court ordered an award of attorney's fees to Mrs. Nolan under a provision of the separation agreement requiring the husband, in the event he should default in his obligations, to pay legal fees "reasonably and necessarily incurred by the Wife to enforce the terms of this Agreement." Of course, as Mr. Nolan points out, any award of fees to Mrs. Nolan under the agreement is contingent upon her prevailing on the merits of her suit, a matter that must abide the remand we have ordered and any further review by this court. We nevertheless reject Mr. Nolan's challenge to the procedural fairness of the fee award.

## A.

Following the trial, the court found that Mrs. Nolan had incurred legal expenses as a result of Mr. Nolan's default, making operative the agreement's attorney fee provision. The court ordered Mr. Nolan to pay attorney's fees and Mrs. Nolan to submit detailed affidavits in support of her request for fees and costs. Mrs. Nolan filed an application and affidavit seeking fees and costs totalling $24,889.27. In his opposition, Mr. Nolan claimed that the fees were excessive and disproportionate in comparison with the judgment. He demanded a hearing at which Mrs. Nolan's attorneys would be required to testify in support of their application and be subject to cross-examination. The court entered an order setting the matter for a hearing.

As the hearing began, the court made it clear that it would permit the parties to submit oral argument, but that it would not require Mrs. Nolan's attorneys to testify or be subject to cross-examination by opposing counsel. Following the hearing, the court entered an order requiring Mr. Nolan to pay Mrs. Nolan $16,500 in fees and $600 in costs. It disallowed the portion of the fees claimed for work associated with Mrs. Nolan's aborted attempt to obtain a temporary restraining order and preliminary injunction to prevent the sale of the marital home when Peter reached age 18, because the husband had not breached the contract in attempting to have the home sold. The court disallowed an additional portion of the fee request "because plaintiff's counsel billed an immoderate amount of time" for certain tasks.

## B.

█ Mr. Nolan asserts that this court's holding in *deSibour v. deSibour,* 478 A.2d

---

17. Moreover, the question under *Weiner,* as to this factor, is "whether excluding the evidence would *incurably* prejudice the party seeking to introduce it...." 557 A.2d at 1311 (emphasis added). Thus, the extent to which Mr. Nolan was able to challenge Mrs. Nolan's claim of arrearage even without the November 22 letter remains a relevant consideration. *Id.; see also*

*Regional Redevelopment Corp. v. Hoke, supra* note 13, 547 A.2d at 1009 (court should consider the nature of the evidence, and the extent to which it is a "key part" of proponent's case).

18. It is within the trial court's discretion, of course, whether to permit explanatory testimony relating to the November 22 letter.

1054 (D.C.1984), required the trial court to allow him to cross-examine Mrs. Nolan's attorneys under oath on her application for attorney fees. We reject this contention. In *deSibour*, the court vacated an award of attorney's fees when the trial court had made no findings and conclusions concerning the award and denied the husband's motion for an extension of time in which to file his opposition to the wife's motion for fees. *Id.* at 1055. We remanded the case for an appropriate hearing on the fee issue. *Id. deSibour* thus does not support a general right to an evidentiary hearing with cross-examination on attorney's fee applications in domestic relations cases. That decision turned on its extreme circumstances in which, despite timely requests for an extension of time in which to file an opposition and for a hearing, the husband was afforded *no* opportunity to defend against the fee claim. Mr. Nolan, in contrast, was permitted to file an opposition challenging the application, and his request for an oral hearing on his objections was granted by the court, which then made findings on each of his objections.

"[W]here a contractual agreement expressly provides for the payment of attorney's fees, the trial court's discretion is limited to ascertaining what amount constitutes a 'reasonable' fee award." *Central Fidelity Bank v. McLellan,* 563 A.2d 358, 360 (D.C.1989). Regarding the nature of proof of reasonableness of a fee, we observed in *Central Fidelity* that our prior decision in *United States v. Reed,* 31 A.2d 673 (D.C.1942), "imposes no absolute rule but rather states that if the court deems it necessary, or if either party desires, testimony *may* be taken as to the nature of services rendered or the reasonable value

thereof." *Id.* (emphasis added; internal quotation marks and citation omitted). The opinion cited *Reed* and other authorities holding "that testimony as to the extent and value of the services rendered is not absolutely mandatory to support an award of attorney's fees." *Id.* at 360 n. 8 (citations omitted). *Central Fidelity* thus implies that the trial judge's discretion to determine the amount of attorney's fees extends to deciding whether to require live witness testimony and cross-examination on an application for a fee award. Lest there be any uncertainty, we now make explicit that the trial court retains discretion to decide the nature of proof necessary to establish the facts affecting its decision as to the amount of fees to award.

Here, the trial court afforded Mr. Nolan ample opportunity to question the fee application, and its order addressed each issue raised by appellant. The court resolved several of the issues raised in Mr. Nolan's opposition and oral argument in his favor. Mr. Nolan thus received an adequate, and demonstrably effective, opportunity to challenge Mrs. Nolan's application for fees. No more was required.

## V.

While retaining jurisdiction of the case, we remand the record for further proceedings consistent with this opinion.

*So ordered.*